JOHN D. RADER, Appellant, v. JESSE DAVIS, Appellee.

**Marriage and divorce:** CUSTODY OF CHILD: MODIFICATION OF DECREE.
1 The sickness of a child, custody of which was awarded the wife by a decree of divorce, will not have the effect of modifying the decree so as to permit the husband to visit the child at a place different from that specified in the decree.

**Same:** DEATH OF CHILD: RIGHT OF HUSBAND TO ATTEND FUNERAL.
2 Upon the death of a child, the custody of which was awarded the mother by a decree of divorce, with the right to the husband to visit it at a different place and upon certain conditions which he never performed, she had the right to control its body, direct where the funeral should be held and the place of burial; and it became the duty of the person owning the home at which she lived and the child died to provide a sepulture and carry the body to the grave, but no duty devolved upon either to provide for a public funeral or to invite anyone to see the body of the child; and upon the principle that the owner has the right to exclude any and all persons from his home, the husband had no rights there uninvited, and no right of action against the owner of the home for failure to invite him or for refusal to permit him to be present, even though his act in so doing may have been malicious.

*Appeal from Boone District Court.*—HON. CHAS. E. ALBROOK, Judge.

TUESDAY, MARCH 5, 1912.

ACTION at law to recover damages for mental suffer-
ing caused by defendant's refusal to permit plaintiff to
visit his sick child and to attend its funeral. The trial
court ordered a verdict for defendant, and plaintiff appeals.
*Affirmed.*

*John W. Jordan* and *Ryan & Ryan,* for appellant.

*D. G. Baker,* for appellee.

DEEMER, J.—Plaintiff married one of defendant's
daughters, Lillie Mae by name, in March of the year 1903,
and as a result thereof one son was born in September of
the year 1904. Because of plaintiff's ill treatment the wife
was compelled to leave him, and being without means she
returned, with her son, to her father's home. Thereafter
she commenced a divorce action against the plaintiff, and
in September of the year 1905 she received a decree, which,
among other things, contained the following provisions:
"That the plaintiff is hereby awarded the full care, cus-
tody and control of the minor son, Maynard Theodore
Rader, she at her own cost and expense to rear, maintain,
clothe and educate her said minor son; until further order
of this court. . . . That the defendant is hereby pro-
hibited and perpetually enjoined from harassing, annoy-
ing, or in any way interfering with the plaintiff or causing
her any disturbance, or her custody of said son. That the
defendant has the right at reasonable times and places,
without in any manner harassing or annoying the plaintiff,
to visit his said minor son; and the costs of this suit are
hereby assessed against the defendant, (and judgment is
hereby ordered and entered against the defendant) for the
costs of this suit."

Thereafter, and some time in the year 1909, plaintiff

herein (defendant in the divorce proceedings) made an application to the court rendering the original decree for a modification thereof, and as a result thereof the following order was entered:

The court finds that there is no showing of such changed conditions since the rendering of the original decree as to justify a modification thereof, therefore dismisses said application at defendant's costs herein, taxed at $———, and does hereby order that execution issue to make same, but the court further finds that the original decree rendered, while providing the right to defendant to visit the minor child of said parties, was not sufficiently specific as to the time and place, and the court further finds that said minor is kept at the home of one Jesse Davis, the father of plaintiff, and that said place is not a suitable place for said defendant to visit said minor child. It is therefore ordered by the court that the said defendant shall have the right to visit said minor one hour each month hereafter at the home of one R. M. Hyatt until the further order of the court, upon the following conditions: That said defendant promptly pay all the unpaid costs which have been made in the above-entitled cause, and that he promptly pay to the clerk of said court, in addition thereto, $2 each and every month, to be applied for the care, support, and education of said child, this order to be subject to modification or cancellation at any time upon the failure of said defendant to show the proper affection for said child and a proper disposition to contribute to the care, support, and education of said child. Said plaintiff to notify defendant three days in advance of the hour fixed by plaintiff for visiting said child, said notice to be by mail; the time to be fixed to be reasonable.

Plaintiff herein did not pay the costs until February 12, 1910, and has at no time paid the $2 per month provided for in the modified decree. Plaintiff's former wife continued to live with defendant, her father, and some time in June of the year 1909, the child became sick, and as a result thereof died on or about July 16, 1909. Arrangements for the funeral were all made by the mother, and

the defendant consented that it be held from his home. He at no time gave any directions as to how the services should be conducted or who should be permitted to attend; but there was enough testimony to justify a jury in finding that he, defendant, said to one Gray, who inquired for plaintiff as to whether or not he, plaintiff, could attend the funeral, "That he did not want them coming around him, and if they did he would do something they had not ought to do." Indeed, it is admitted in defendant's answer that at all times since the divorce decree was rendered he had denied plaintiff the right, privilege, or opportunity of entering in or upon his premises for any purpose. This denial of plaintiff's right to go upon the premises seems to have been due to the fact that, some time after the separation of plaintiff and his wife, he, plaintiff, and defendant had an altercation over the matter in which plaintiff assaulted the defendant and knocked him down in one of the streets of the city of Boone.

The decrees entered in the divorce case, from which we have quoted, were not appealed from and were therefor binding upon the plaintiff herein. By the terms thereof he was in effect forbidden from visiting his child at defendant's home, and was prohibited from visiting him elsewhere unless he paid the costs of the proceedings and the sum of $2 per month for the child's support. Neither of these things was done, so that it is clear plaintiff had no right to visit the child while at defendant's home. This is virtually conceded. But plaintiff insists that when the child became sick and finally died these facts so changed the situation that, as a matter of law, he had an absolute right not only to visit the child while alive, but also to attend its funeral after death. We do not think that the sickness of the child had the effect of modifying the decrees from which we have quoted. They were either absolute in terms or so qualified that plaintiff had no rights

1. MARRIAGE AND DIVORCE: custody of child: modification of decree.

thereunder until he performed the conditions imposed by the decrees. This he did not do.

Assuming that the death of the child so changed conditions as that the decrees were inapplicable, we then have the question, Had plaintiff either an absolute or qualified right to attend the funeral of his child which was being held from defendant's house? He, of course, obtained no right by reason of his former wife having taken up her domicile with her parents. They were as much strangers to each other as if they had never been married. True, the child was of his own blood, but by decree of court he had lost all right of custody or control of the child, and it was for the mother to say how the body should be controlled, where the funeral services were to be conducted, and where and how the child should be buried. By plaintiff's misconduct (as conclusively established by the decree) he had forfeited all rights to the custody and control of the child which he might otherwise have had. So that plaintiff had neither an absolute nor a qualified right to control the disposition of the body of the child or the funeral arrangements. But it is said that he had the right to attend the funeral which was being held at defendant's house; and that whether he tried or not, and conceding defendant's lawful right to say who should come upon his private premises for any purpose, even to attend a funeral, yet if he, defendant, although acting within his strict legal rights, maliciously denied plaintiff the right to enter the premises to see his child, or to attend the funeral services, an action will lie.

The questions thus presented are unique in character, and naturally there are no precedents which are directly in point.

At common law the duty of providing sepulture and of carrying to the grave the dead body decently covered was cast upon the person under whose roof the death took

2. SAME: death of child: right of husband to attend funeral.

place; for such a person could not keep the body unburied nor do anything which prevented Christian burial. *Commonwealth v. Susquehanna Coal Co.,* 5 Kulp (Pa.), 195; *Scott v. Riley,* 40 Leg. Int. (Pa.) 382.

There was no duty, as we understand it, however, to conduct a public funeral, and, if there were, private funerals are so common in this country that we would not feel disposed to say that public services are required to be held. Defendant then was bound to provide sepulture and to carry the body to the grave; but he was not required to invite anyone onto his premises simply to see the dead body or to have any sort of burial services for the public. It is fundamental, of course, that a man's dwelling house is "his castle," and that no one has the right to enter except upon invitation, express or implied. He may exclude whom he will for good reason or for no reason, without liability for damages, and may defend his home against all intruders, even to the extent of taking life. *State v. Peacock,* 40 Ohio St. 333; *Pond v. People,* 8 Mich. 150; *State v. Scheele,* 57 Conn. 307 (18 Atl. 256, 14 Am. St. Rep. 106); *State v. Patterson,* 45 Vt. 308 (12 Am. Rep. 200).

There is no implied invitation to anyone to attend a funeral conducted from a private dwelling unless it be announced that such funeral is public, and even if so announced the license or invitation may be revoked and anyone denied the right to attend whose presence might be objectionable. It has even been held that the lord of the castle may so far exercise his authority as to say that his wife's relatives may not visit her, either in sickness or in health. Rogers on Domestic Relations, section 172. See, also, cases cited in 21 Cyc. at page 1147, among which is *Shaw v. Shaw,* 17 Conn. 189; *Commonwealth v. Wood,* 97 Mass. 225; *Lawrence v. Lawrence;* 3 Paige (N. Y.), 267.

The mother gave no intimation that she wished the father to see the child either while sick or after death, and

defendant certainly had the legal right to exclude plaintiff from his premises at any time and under all circumstances. But it is said that, although defendant has this legal right, he could not exercise the same maliciously, and that if his act in excluding plaintiff was malicious action will lie. It is true that in some circumstances the doing of a perfectly lawful or legal act maliciously will give ground for an action; but we do not think this exceptional rule should apply here. As the control of one's own dwelling is absolute, the intent with which he excludes one therefrom is wholly immaterial.

The rule of the common law everywhere prevailing where that system is in force is that the doing of an act, lawful in itself, does not become actionable even though done maliciously; that is, in a vindictive way. *Heald v. Carney,* 11 C. B. 903 (73 E. C. L. 993); *Boyson v. Thorne,* 98 Cal. 578 (33 Pac. 492, 21 L. R. A. 233); *Kelly v. Railroad,* 93 Iowa, 452; *Bohn v. Hollis,* 54 Minn. 223 (55 N. W. 1119, 21 L. R. A. 337, 40 Am. St. Rep. 319). The civil law, however, deems an act otherwise lawful in itself illegal if done with the malicious intent of injuring a neighbor; but this principle has not found place in our law save in a very limited sense. *Chaseman v. Richards,* 7 H. L. Cases, 388.

Generally speaking, "malicious motives make a bad act worse, but they can not make that wrong which in its own essence is lawful." *Dawson v. Kemper,* 32 Ohio Law J. 15; *Jenkins v. Fowler,* 24 Pa. 308. See, also, notes to *Letts v. Kessler,* 40 L. R. A. 177. The case is not ruled by *Dunshee v. Standard Oil Co.,* 152 Iowa, 618, and other like cases cited in the opinion which have introduced some exceptions to the general rule and in effect applied the civil law to the peculiar facts there appearing. In most, if not all, of these cases, the defendant sought to promote some pecuniary or beneficial interest either of his own or of some stranger, and the question was whether or not the purpose was suffi-

ciently direct and proximate to justify the conduct. See, also, upon this subject, *Passaic Works v. Ely Dry Goods Co.*, 105 Fed. 163, 44 C. C. A. 426, 62 L. R. A. 673, and exhaustive note to the L. R. A. report, and an article in 18 Harvard Law Review, at page 411.

In the instant case the defendant did no injury to the property of plaintiff, nor was he intending to secure any profit to himself as in the exceptional cases cited. Plaintiff had no right to attend the funeral, and defendant had the undoubted right to keep him off his premises. Having the right of selecting his guests or visitors, his malicious motive in excluding one does not give that one a right of recovery. This is the effect of our holding in *Rizer v. Tapper*, 133 Iowa, 628.

There is no element of conspiracy in the case, and no ground for recovery is shown under any exceptional rules to which our attention has been called.

It follows that the trial court was right in directing the verdict, and the judgment entered thereon must be, and it is, *affirmed*.