MINNIE ALBERTUS, Appellee, v. CHARLES A. ALBERTUS, Appellant.

**DIVORCE:** Custody of Children—"Change of Circumstances"—
1 **Scope.** The "change of circumstances" which will arm the court with power to modify a former order relative to the custody of children may consist of improper conduct on the part of the custodian of the child subsequent to the original order. So held where the charge was that the custodians, the maternal grandparents, were teaching the child to hate the father.

**DIVORCE:   Custody of Children—Unfitness of Both Custodian and
2  Applicant.** It is not error for the court to deny the application
of a father for the *sole* custody of his child, and to permit the
child to remain in the custody of its grandparents, where it had
been placed by a former order, even though the father and the
grandparents were both unfit persons to have the child, especially
where the order permitting continued custody in the grandparents
was conditioned on their good behavior.

*Appeal from Pottawattamie District Court.*—E. B. WOOD-
RUFF, Judge.

SATURDAY, JANUARY 13, 1917.

ON application for divorce instituted by Minnie Albertus,
and cross-petition by her husband, Charles A. Albertus, the
present appellant, a divorce was decreed, and none of the
children of the marriage given into the custody of the mother.
Two, young boys, were given to the father. The other, Mabel,
then a very young girl, was placed in the custody of her
maternal grandparents, with whom her mother at· present
lives. The husband applied for a modification of the orig-
inal decree, asking that the girl be taken from the custody
of the grandparents and placed in his. This was denied,
and he appeals.—*Affirmed.*

*Ine D. Shuttleworth* and *Genung & Genung,* for appel-
lant.

*D. H. Sullivan,* for appellee.

SALINGER, J.—I. The original decree, rendered on Octo-
ber 6, 1913, gave the appellant, who was defendant in the
suit, the custody, and charged him with the duty to main-
tain, Edward and Alvin, and the child Mabel was placed in
the custody of the maternal grandparents. On the 11th of
February, 1914, the father moved to modify the decree, upon
the ground that he was denied the privilege of seeing Mabel;
that the maternal grandfather has threatened to take the life
of the father if he again called at his home to see the child;

that the grandfather refuses to allow said child to visit her father, or to permit her to visit her brothers at their home with him. The modification asked is ''that he be given the absolute care, custody and control of said minor child.'' Issue was joined on this application, and the court made an order finding that there was a refusal to permit the father to visit the child; that this was in violation of the original decree; but that, because the grandparents are German, and the grandfather a man who is very deaf, it is very uncertain whether they understood the original decree; and that, on the whole, it is of opinion that it is not certain that this violation was willful. It is a rather dangerous precedent to excuse nonperformance of an order of court on part of those to whom the order is directed because a doubt arises whether the disobedience was willful, and the record indicates that the trial judge was not inclined to minimize the disobedience. He undertook to prevent further excuses of this kind by saying that, as the grandparents had left the court room before the present order was written out, he requested the attorneys for the parties ''to explain this order fully to their respective clients, so there can be no claim made in the future that they did not understand the orders of the court.''

Another thing to be noticed is that the court found ''that the primary cause of this application has been the treatment accorded defendant by the grandparents;'' wherefore, ''the costs of this action should be taxed'' to ''the mother and the said grandparents of the minor Mabel Albertus.'' If this were all, we should incline to hold that the order made should not be approved, in so far as it works retention of the child in the custody of the grandparents.

II. The appellee argues, on the support of cases like *Slattery v. Slattery*, 139 Iowa 419, that disposition of minors is, in a case of this kind, not interfered with unless there be a clear abuse of discretion, and *Lindquist v. Lindquist*, 148 Iowa 259, that the paramount question is the welfare of the child.

This is sound, but not decisive. If the present custodians are schooling the child to hate the father, or if, for any other reason, they have proven unfit to be its custodians, the welfare of the child might require a change of custody, even though, as is the case here, the little girl testifies in all honesty that her grandparents didn't talk to her about her papa; that she's happy with her grandparents and they are good to her; that while sometimes she would rather live with her brothers, because she likes to play with them, she can go to see them at the home of her father whenever she wants to, and that she would rather stay at her grandmother's.

1. DIVORCE: custody of children: "change of circumstances:" scope.

III. *Graves v. Graves,* 132 Iowa 199, and *Crockett v. Crockett,* 132 Iowa 388, hold that the original decree is conclusive unless there is a change in circumstances. But it does not follow that, as appellee asserts, this means nothing but a change in financial condition. It would be a sufficient change of circumstances, within the reasoning of those cases, if this alleged animosity or other unfitness were not in existence when the original decree was entered.

IV. We have intimated that there is some reason to think that the hostile attitude of the grandfather was not conducive to promote the welfare of the infant, and that some of the conduct which displays a tendency to estrange the child from its father and to influence her against him was not validly excused. But we think we are not called upon to decide whether the present custodians are unfit. Taking into consideration the advantages the trial court possessed, in so far as may properly be done on review *de novo,* we think it was warranted in finding that the father, too, was unfit to have the custody of the child; that he was guilty of improper conduct in making what seemed to be threats against the grandmother, and, upon the testimony of the little girl, which bears every evidence of childish honesty, that, in

2. DIVORCE: custody of children: unfitness of both custodian and applicant.

talking to her about taking her away, the father said he
had come to see if he couldn't take her away "from those
old sons of b——s." If the father was unfit to · become
custodian, it was not error to decline his application that the
little girl be entrusted to him. If, under the application
made, the court could not put her into the custody of a third
person, then it was not reversible error to let her remain
with the grandparents, even if they are unfit. Since appel-
lant asked no relief except that he be made custodian, then,
if the court rightly found against his fitness, his essential
complaint is that the court did not leave the child without
a custodian. If it could not give it to the father nor leave
it with the grandparents, then if, under the issues as appel-
lant framed them, there was no power to place her with a
third person, as said, the essential complaint now is that, if
the father could not be her custodian, the court should have
left her without one. The only thing the court could do,
under the issues, was either to leave the custody unchanged
or to give it to appellant. It had no power to reframe the
application, and, as framed, had no power to select a custo-
dian other than the present ones, except the father. Had
the court appointed a third person, it could have been well
objected that the fitness of the new custodian had not been
presented nor passed upon, and that no opportunity was
given under the issues to litigate his fitness. See *Mitchell
v Beck*, 178 Iowa 786.

V. The further reason for not disturbing the order
was that the same is conditional. It recites that:

"It is based upon the understanding which has been
made plain to the attorneys for the grandparents, that, unless
they permit the father of Mabel Albertus to visit his daugh-
ter and have her visit him in accordance with the orders of
the original decree, that the custody of the child should be
removed from the grandparents, and it is also the order of
the court that the defendant should conduct himself in a

proper manner when he visits the child at the grandparents', and on his part give no cause for complaint and cause for refusal on the part of the grandparents to allow him to come to their house; and that, if the father fails so to do this, decree should be modified to prevent him visiting at the grandparents, but if he conducts himself in a proper manner, and the grandparents refuse to abide the order of court heretofore made, then the custody of the child should be taken from them."

This is in no true sense a final order, but in its essence is interlocutory—an arrangement for further test on probation. We think it is so framed as that, without further change of circumstances, the application may be renewed below, upon showing that the misconduct which was the basis of the present application has been continued since the entry of the modified order. It may well happen that even since then, and because of it, the conduct of neither party will give just cause for objection on part of the other, and therefore that the child is with those who have finally proven proper custodians, and with whom she was placed by the original decree. Surely, we ought not to anticipate that the contrary will happen and, as an appellate court, order that this little girl shall now be summarily taken from her grandparents, who, as the record makes quite manifest, will suffer torture from the removal.

We think that, under all the circumstances, the order appealed from should be—*Affirmed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.