EMMA E. NEVE, Appellant, v. NICHOLAUS F. NEVE, Appellee.

No. 40138.

APRIL 14, 1930.

*Verne Benjamin* and *Carl F. Benjamin,* for appellant.

*Kimball, Peterson, Smith & Peterson,* for appellee.

KINDIG, J.—On May 2, 1928, the district court of Pottawattamie County, in a previous cause then pending, granted the defendant-appellee, Nicholaus F. Neve, an absolute divorce from the bonds of matrimony existing between him and the·plaintiff-appellant, Emma F. Neve. In that former action, the appellant was plaintiff, and the appellee defendant. The appellee obtained his decree of divorce through a cross-petition, alleging adultery.

As the result of the marriage, to dissolve which the divorce was granted, sixteen children were born to this couple. At the time of the divorce trial, eight of them were minors. They were Paul, Eleanor, Louie, Zella, Wyona, Clayton, Nina, and Juanita. Their ages, on May 2, 1928, were 14, 12, 10, 8, 6, 4, 2, and 1 respectively. After said judgment and decree was thus entered, appellant, through two prior attempted modifications thereof, sought the custody of the children. Each application for that redress was denied. So, on April 16, 1929, appellant again asked a modification of the judgment and decree, in her third attempt to obtain the custody of the minor children. Again the district court refused to modify it. Hence this appeal.

Section 10481 of the 1927 Code provides:

"When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right. *Subsequent changes may be made*

*by it in these respects when circumstances render them expedient."* (The italics are ours.)

Bases for the requested modification are: First, that the appellee is neglecting the children, in that he fails to properly clothe, feed, and care for them; second, that appellee is morally unfit to have the care, custody, and control of the children, because he drinks intoxicating liquors to excess; third, that the appellee leaves the children alone at night; fourth, that the appellee has a violent and uncontrollable temper; fifth, that the appellee curses and swears in the presence of the children; and sixth, that the appellee keeps the minor child Eleanor out of school, and compels her to do housework.

All the foregoing allegations are denied by appellee, except the one concerning Eleanor's being kept out of school. Appellee explains that, under the circumstances, it is necessary for her to do housework until "matters are straightened out."

Material and sufficient subsequent facts and circumstances must appear after the original decree and judgment, before it can be modified or changed. So the custody of the children cannot be taken from appellee and placed with appellant unless said subsequent facts and circumstances render such action expedient. A new trial is not permissible, under the statute above quoted. Therefore, the parties are concluded by the original decree, so far as the then existing circumstances are concerned. *Ferguson v. Ferguson,* 111 Iowa 158; *Daniels v. Daniels,* 145 Iowa 422; *Albertus v. Albertus,* 178 Iowa 1124; *Delbridge v. Sears,* 179 Iowa 526; *Bennett v. Bennett,* 200 Iowa 415. The italicized portion of the Code section previously mentioned, makes essential material and adequate facts and circumstances arising after the original judgment and decree. Also, those facts and circumstances must be such as to "render expedient" a modification of the original judgment and decree. See Section 10481, supra. Without such prerequisite, there can be no modification. When, however, there are, in fact, subsequent changes in the "circumstances," as contemplated by the legislature, the former judgment and decree may be modified, to the extent that the custody of the children is taken from one parent and given to the other. *Boggs v. Boggs,* 49 Iowa 190; *Sherwood v. Sherwood,* 56 Iowa 608.

Appellant here has the burden to show the necessary subsequent facts and circumstances which are to render expedient a modification of the original judgment and decree. Has she furnished the required proof? We think not. There is no evidence of any kind or nature suggesting in any way that the appellee drank intoxicating liquors. Neither does it appear that he is morally unfit to have the care and custody of the children. Now, as when the original judgment and decree was entered, appellee is working for the railroad company at the transfer depot. His wages then were and now are $100 per month. Likewise, the home surroundings, as well as appellee's ability to care for the children, are the same now as they were when the original judgment and decree was entered. Obviously, the children are older, and because thereof, perhaps the appellee is in a better condition now to care for them than he was on the date of the original judgment and decree. These children attend the public schools regularly, and are making good grades. Witnesses say that the children are well clothed and sufficiently fed. Those testifiers also declare that the house is neat, clean, and comfortable. Moreover, the children are healthy. One boy is under weight, but it does not appear that the condition arose through lack of nourishment. He is given milk, with the hope that the necessary weight will be gained. Never have the children been left at night without some older person in charge of them. Upon two or three occasions, appellee attended church in Omaha, and remained away at nights. On each occasion, however, the children were fully informed, and a competent person left in charge of them.

Eleanor is kept out of school at the present time. She has finished the eighth grade. Apparently her absence from school is temporary only, because, during his examination, the appellee said that this girl should return to school, and that he would have her do so as soon as "matters are straightened out." An attempt will be made to hire someone as housekeeper, according to appellee, and then he will "let [Eleanor] go to school again."

Appellant asserts that twice the children did not have food, and it was necessary for appellee to ask assistance from the Salvation Army and overseer of the poor. This is admitted by appellee. His explanation for it, however, is that it took all the money he earned to pay past-due debts. Also, it is suggested by appellee that most, if not all, of those obligations were caused by

appellant, through her attempts to obtain possession of the children. Appellee is hopeful, and says that he can pay all the expenses "if [he is] left alone, and not pestered."

It is charged that the appellee has an uncontrollable temper, and because thereof he abuses the children. Some evidence was offered in support of that contention. When carefully analyzed, however, the testimony does not prove very much. Trouble arose between appellee and the son Paul, who became disobedient and uncontrollable. Manifestly, appellee insists that the children mind him and the daughter Eleanor, who has charge of them. Paul refused, defied Eleanor, and "swore at the whole family." Naturally, appellee interfered, and insisted that Paul be obedient and respectful. Later, Paul left home, and is now employed in a store. Nowhere does it appear that the appellee abused the children in any manner or way. According to the record, appellee's temper is neither unusual nor extraordinary. Undoubtedly some discontent arose in the home after appellant's visit there at Christmas time, immediately before the trial in the case at bar. While at appellee's home on that occasion, appellant, it appears, told Eleanor that she would be taken to Chicago if the court would permit. The children then became more and more restless. When the entire record is fully and carefully considered, however, it does not appear that there was abuse or neglect on appellee's part.

Finally, it is said that the appellee swears in the presence of the children. He does not swear at them. Ideal fathers would not swear even in the presence of their children, yet many good fathers thoughtlessly do. Swearing has a varying meaning. Some call certain slang words swearing. Others do not. Much depends upon the "swear words" used. Nothing appears in the record concerning the language employed by appellee. No indication is made that appellee's language tended to demoralize the children. Unless such showing is made, we cannot say that he is not a fit person to have the custody of these minors.

Appellant lived in Chicago, Illinois, with an older son and his wife. It is contemplated by appellant that the children shall be kept in that city, in the home of said older son. He and his wife live in a five-room cottage in northwest Chicago. This older son is employed by an electrical company, and earns about $25 per week. His work at that place has continued for approx-

imately three months. Stability of the employment is not assured. Mrs. Neve, the appellant, works out, for $8.00 or $10 per week, when she can find employment. Nevertheless, the appellant contemplates taking these minor children from Council Bluffs into said Chicago home. Plainly, there is no assurance that the condition will be better in Chicago. The older son aforesaid expressed his willingness to help his mother support the children. Uncertainty appears, however, concerning the amount which this son would be able to give his mother, after supporting himself and family. A five-room cottage is now occupied by appellant and the older son's family, as before stated; but no one knows what kind of a house will be furnished if these minor children are sent to Chicago, for appellant indicates that the present location is too far from school, and that it will be necessary for her to procure a new home, in the event she obtains the children. Whether the son and his wife would follow the mother to the new home is not certain. Someone would have to remain with the children while the mother was away at work, or Eleanor could not go to school in Chicago any more satisfactorily than while with her father in Council Bluffs. In Council Bluffs, the particular neighborhood and moral surroundings chosen by appellee are now known and understood. Also, the eight-room house now furnished by appellee is large enough and entirely sufficient to accommodate the family. A five-room cottage would hardly be adequate. Furthermore, the children are in school, acquainted with their classmates, and therefore established.

Serious doubt arises as to whether appellant would care for the children as well as appellee has done. Just before the divorce was granted, appellant left the children in appellee's home. At that time, they were sick in bed with the measles, and the only care appellant could expect them to have, under the circumstances, was such as appellee might be able to give. Proper care and treatment were furnished by appellee, and the children recovered, and became well and strong again. If the father cared for, fed, and clothed the children under those circumstances, it does not appear why he cannot continue doing so. ''Subsequent and material'' facts and circumstances are not shown by appellant. Mere subsequent facts and circumstances are not enough. The subsequent facts and circumstances must be of such charac-

ter as to render expedient a change in the original judgment and decree. Thus appellant must prove that such subsequent facts and circumstances affect the well-being of the children, and demand a change in their custody. Their "best interest is paramount to the rights" of either father or mother. *Ladd v. Ladd,* 188 Iowa 351; *Bennett v. Bennett* (200 Iowa 415), supra. See, also, *Reeves v. Reeves,* 205 Iowa 215. Therefore, under the record here presented, we are constrained to hold that the subsequent facts and circumstances, if any are shown, do not demand that the custody of said children be taken from the appellee and given to the appellant.

Hence, the judgment and decree of the district court should be, and hereby is, affirmed.—*Affirmed.*

MORLING, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.