BONNIE JO NICHOLS, Appellant, v. EDMUND PERRY NICHOLS, Appellee.

No. 47253.

(Reported in 34 N. W. 2d 187)

October 19, 1948.

Life & Davis, of Oskaloosa, for appellant.

Leon N. Miller, of Knoxville, for appellee.

Smith, C. J.—The decree which defendant seeks by this proceeding to have modified granted plaintiff the divorce and was rendered October 15, 1945. It gave care, custody, and control of the minor son to plaintiff with right to defendant of having the "child visit him and remain in his home at all reasonable times," defendant to pay $25 per month until the child was sixteen years old.

This provision was not in accord with a stipulation of the parties which provided for divided custody, with defendant to have his son during the school week and plaintiff to have him week ends from Friday night until Monday morning and during vacations the custody to be equally divided. The stipulation provided defendant was to furnish the child "all clothing, cost of schooling, medical and hospital expenses, and any other necessaries for his support and maintenance."

The parties however, after the divorce decree was rendered, seem to have followed the provisions of their stipulation rather than those of the decree. Some sort of oral or implied arrangement was made between them whereby the boy was left with his father, and plaintiff receipted to defendant for $300, being the $25 per month (provided by the decree) for a year in advance. This was done the day the decree was entered. No money was actually paid. The son, Cleon Lee Nichols, was then nine years old.

The parties lived at the time of the divorce decree (and defendant still lives) in a six- or seven-room house on a farm four miles east of Knoxville and about a block from the Flagler school where Cleon Lee attended. When plaintiff moved out after the divorce defendant and the boy were left living there alone three or four weeks until defendant's sister and her two children, age four and two respectively, moved in. Later the sister's husband came after being discharged from the Navy.

Plaintiff moved into a three-room apartment in Knoxville and found employment, first as a dental assistant and later with a dress goods establishment as an "alterating" lady. On January 2, 1947 she remarried and established a home owned by her new husband approximately seven miles east of Knoxville. She describes it as on a farm of 240 acres and as "a completely modern home about $1\frac{3}{4}$ miles from school" with school-bus service that goes past the house.

Plaintiff testifies she had the boy with her "approximately eight times on Sundays" while she lived in the apartment. Defendant testifies he would say "that in the year's time the decree was granted, I brought him to see his mother twenty or thirty times." The actuality is probably somewhere between plaintiff's and defendant's estimates.

There are the usual charges between the parties that each sought to prejudice the child against the other. The charges, under the record, need not be taken too seriously. They seem based more on suspicion than on evidence. Plaintiff says she went to defendant's home with regard to custody of the child once before her remarriage. "I definitely have tried to get the custody of this child from my former husband subsequent to

my remarriage. * * * He never refused me with words * * *."
However, she further testifies:

"I should say it was four weeks after I remarried I first
had my child with me, the last of January 1947. I got him
about 10 o'clock and took him home that evening, on Sunday.
He was in school at that time in the district in which his father
was living. I had the child with me thereafter most every
week end and returned him. He stayed with me two weeks
during vacation and that is the longest Cleo ever stayed with
me."

Plaintiff says that after her remarriage she always had
to go after the boy. Defendant never brought him. There was
one period of a month and a half (apparently before her re-
marriage) she says she did not have him. At the end of that
period she went after him and then he was with her three or
four days.

We shall not try to brief all the testimony. It is somewhat
confused and lacks chronological sequence. The parties on the
question of custody were clearly guided by their own agree-
ment and not by the decree. The boy continued for two years
to attend the Flagler school, the only school he has ever known.
Plaintiff speaks highly of the teacher there. Defendant is a
director. There does not seem to have been any serious effort
to change the arrangement until about September 1, 1947.

The actual trouble then began as school was about to open.
Plaintiff testifies she had made arrangements "to take full
custody of the child and put him in school." She says she
had some trouble getting him. After writing she would be over
after him she found him at a neighbor's and he was reluctant
to go with her. Defendant testifies she got him "sometime in
the last week or ten days of August."

Defendant came to get him back the morning school opened.
There was some argument. Plaintiff says, and defendant denies,
that he (defendant) used profanity. They agree that the boy
got in his father's car and he and his father departed. There
is no suggestion that any force was used.

On September 10, 1947 defendant filed this petition to
modify the divorce decree so it would grant him the "care,

custody, and control" of the child with right to plaintiff of visiting him "at reasonable times and places." On September 12 plaintiff filed information and application for rule to cite defendant for contempt in failing to perform or comply with the original custodial decree.

Issues were joined in both proceedings. They were by agreement consolidated for hearing. At its conclusion the trial court ordered modification of the divorce decree substantially as prayed by defendant. The record does not disclose what if any disposition was made of the contempt proceeding, but in their briefs both parties say it was dismissed.

It will be seen the appeal presents the usual issues incident to proceedings for the reopening of divorce custodial decrees: whether there has been such change of circumstances as to render modification "expedient" under section 598.14, Code of 1946; and whether the welfare of the child will be best served by modification.

I. The burden here is on defendant to show some material change in the circumstances of the parties, financial or otherwise, making it equitable that terms be imposed different from those provided by the divorce decree. Kinney v. Kinney, 150 Iowa 225, 228, 129 N. W. 826; Neve v. Neve, 210 Iowa 120, 123, 230 N. W. 339.

We have consistently and repeatedly held that under Code section 598.14 and its predecessors in earlier Codes the original decree is conclusive of the issue of custody under the conditions then existing; and subsequent modification can be ordered only upon a showing of material change in circumstances making such modification expedient. Neve v. Neve, supra; Goodrich v. Goodrich, 209 Iowa 666, 228 N. W. 652; Jensen v. Jensen, 237 Iowa 1323, 25 N. W. 2d 316. The correctness of the original decree may not be relitigated in subsequent modification proceedings. Crockett v. Crockett, 132 Iowa 388, 106 N. W. 944.

In the divorce decree here the trial court disregarded the stipulation of the parties as to custody of their child. No question is now or could have been raised however as to the court's right so to do. See Slattery v. Slattery, 139 Iowa 419, 116 N. W. 608. And its wisdom is of course not in issue now.

We have the curious fact that notwithstanding the court's action the parties straightway and voluntarily decided, by their conduct at least, to ignore it and to proceed substantially in accordance with their stipulation which the court had refused to approve.

We must view this as only a temporary departure, necessitated perhaps by the exigencies of the then situation of the parties. The waiving of maintenance payments for a year so indicates. Her subsequent conduct does not indicate an intention on plaintiff's part permanently to abandon the custody which the court awarded her, even if we could grant her right so to avoid the responsibility of such custody.

The original decree still stood giving her the right of custody and defendant only the right to have the child visit him and remain "at all reasonable times." We have now to determine whether conditions have materially changed since it was entered.

Two alternatives confronted the court at that time, either to leave the child to live alone with his father in the family home or go with his mother to such home as she would be able to furnish. The court chose the latter. The nine-year-old boy perhaps needed the undivided care and attention his mother could then give him. The father "baching" it in the disrupted home could offer little to counterbalance the loss of such care.

Undoubtedly that situation is now changed. Plaintiff has remarried and while she is now in position to provide a comfortable home, it might well be assumed there would not be the same intimate and undivided association between her and the child as would have been possible before her remarriage. A new element is added by her marriage.

Again, defendant's situation has changed. His sister and her family have come into the home. It is no longer a "bachelor's hall" but has again assumed the appearance of a family home.

And last, but not least, the child is two or three years older and has in the meantime become more solidly attached and inured to the only home and school life he has ever known.

These are all material changes which may profoundly influence the future of the child and which clearly justify a re-

examination of the original decree with a view of modification.

II. And how about the second consideration—the welfare of the child? Here we enter a realm where human foresight can only speculate as best it may. Certainly it is no place for dogmatic pronouncement. We may only reason humbly from such experience and use such knowledge as has been vouchsafed us.

If the original decree is to be now enforced the boy would be taken from the care of and association with his father—an association that has been peculiarly intimate since the separation of his parents. He would be placed in a new environment with a new father concerning whose personality and attitude toward the child the record is silent. The boy drives a small tractor and goes around the neighborhood with his father, threshing and baling. He went with his father to attend the rodeo at Sidney and to shows occasionally.

Enforcement of the original decree would take the child from the school he has always attended close to his home and from his school associates and would place him in another school a mile and three fourths from his new home. It is true he would have his mother's care which he does not now have but it probably could not compensate for the loss of close association with his father which might be much more necessary to an eleven- or twelve-year-old boy.

Nor can it be assumed the mother's care and control of her child would be undivided, since her marriage to another husband who doubtless would, probably should, absorb some of her attention and participate somewhat in the management of the child.

We are not suggesting these matters by way of criticism but as facts which human experience tends to establish. The child-custody problems growing out of divorce and remarriage are delicate. Children of the tender age of this boy are impressionable. We think the trial court wisely decided to leave the child in the environment and under the control to which he has always been accustomed. What the situation would be now if the change of custody had been actually made when the original decree was entered we need not determine. The record discloses no material superiority of one home over the other

in the way of physical conveniences. The other considerations we have pointed out however preponderate in favor of modification.

The case is one the decision of which involves to an unusual degree the exercise of judicial discretion, based not only on the evidence but also on the appearance and demeanor of the parties. This advantage the trial court has had.

▪ III. It is urged the court erred in dismissing the charge of contempt which plaintiff initiated against defendant. The information or application for rule was based upon defendant's alleged refusal to return Cleon Lee to plaintiff according to the terms of the divorce decree.

The record shows, as we have pointed out, that the original departure from the custodial part of the decree was participated in by both parties and was pursuant to some voluntary arrangement between them. No effort was made by plaintiff to terminate this arrangement and take over the custody of her child for nearly two years after the decree and practically eight months after her remarriage.

We would be reluctant to sustain the charge of contempt under this record. Furthermore section 665.11, Code of 1946, provides that no appeal lies from an order to punish for contempt, and we have held the same is true as to an order discharging a contempt proceeding. Metzger v. Metzger, 224 Iowa 546, 278 N. W. 187; Currier v. Mueller, 79 Iowa 316, 44 N. W. 555.

Under the cited authority we must and do dismiss the appeal from the ruling on the contempt charge.

IV. We have already expressed general approval of the modification order. However it gives plaintiff only the vague "right to visit said child at any and all reasonable times." We think the order should give her not merely such right of visitation but also the right to have the boy in her own home over one week end each month in such way as not to interfere with his school work and attendance.

As so modified the order of the district court is affirmed.—Affirmed.

All JUSTICES concur except HAYS, J., who takes no part.