KENNETH J. YORK, appellant. v. CLARA YORK, appellee.

No. 48525.

(Reported in 67 N.W.2d 28)

134

NOVEMBER 16, 1954.

Lambach, Kopf & Berger, of Davenport, for appellant.

Anthony Campana, of Davenport, for appellee.

LARSON, J.—Plaintiff and defendant were divorced on the eighth day of July, 1949, and plaintiff was awarded the custody of the minor children of the parties, who were Stephen Joseph, age eight, Kenneth Donald, age seven, and Terrence Michael, age six. Defendant was "given the right to visit said children either Saturday or Sunday of each week, provided the children are returned to the residence of the plaintiff * * * by 6:00 p.m. on the day on which the defendant has the children with her." The decree also expressly provided that "the defendant is not to take said children * * * outside of Scott County, Iowa." Defendant had resided at Elkhart, Indiana, for approximately six months prior to the divorce. She had entered her appearance to that action but did not ask for custody of the children. She saw the children only once prior to July 24, 1952. On two occasions she tried, but found no one at home. She visited them on July 24, 1952, when she first asked to take them back to Ohio with

her. Defendant had married Merle Garey, a railroad engineer, on June 7, 1952, and now resides on Shelly Avenue in Maumee, Ohio. Her husband earns approximately $6000 per year and they are buying a six-room, story-and-a-half modern house on contract. Plaintiff never remarried and he and the children are living with his mother in her modern five-room home in Davenport, Iowa. Plaintiff is a painter by trade and, as a disabled veteran, received a 60% disability pension. He pays his mother $30 per week for the boys' support and also buys their clothing and other articles they need.

In her application to modify the decree defendant alleged plaintiff refused to let her see the children or to talk to them on the telephone, and would "not co-operate with defendant in making arrangements to see said children on Saturdays and Sundays"; that the cost and hardship would be unbearable for her to visit the children once a week or even once a month, and she prayed that she be permitted to take them to her home in Ohio for three months each summer. This action filed August 21, 1953, was commenced after defendant and her husband had visited Davenport on August 13 and 14 and again on August 18 and 19, 1953, and failed to see the boys. The trial court assumed plaintiff was in some way to blame for defendant's failure to visit the children and, although it denied a change in the general custody, nevertheless modified the decree so as to permit defendant to take the children to her home in Ohio for three weeks each summer as a "vacation." Plaintiff appealed.

I. Under our many holdings and by all authorities a divorce decree, if not appealed, is final as to the circumstances then existing. Authorities need not be cited. The district court is granted power to modify a decree of divorce giving custody of minor children when the circumstances existing at the time of the original decree of divorce have changed substantially and it becomes expedient to modify the terms of the decree. Code, 1954, section 598.14. We have discussed these provisions many times in the past. Blundi v. Blundi, 243 Iowa 1219, 1226, 55 N.W.2d 239, 241; Crockett v. Crockett, 132 Iowa 388, 106 N.W. 944; Albertus v. Albertus, 178 Iowa 1124, 160 N.W. 830; Keyser v. Keyser, 193 Iowa 16, 186 N.W. 438; Bennett v. Bennett, 200 Iowa 415, 417, 203 N.W. 26. In the latter case we said:

"The primary thought underlying this statute and this theory of the law is that, at all times and under all circumstances, the best interest and welfare of the child are the dominant factors, and that, if the court is to exercise its discretion, it must consider all the facts in evidence in the case, and determine therefrom whether or not there is such a change of circumstances as contemplated by the statute."

Obviously each case must depend largely upon the facts disclosed by the evidence. We give much weight to the trial court's determination for it is better able to see and hear the witnesses and evaluate their testimony. Maron v. Maron, 238 Iowa 587, 28 N.W.2d 17; Brin v. Brin, 240 Iowa 659, 37 N.W.2d 261; Dow v. Dow, 240 Iowa 145, 35 N.W.2d 853. However, this determination is not absolute and we will differ with the trial court if convinced the circumstances do not justify the modification, or if we believe the modification not for the best interest or welfare of the child. Our review is de novo. Jensen v. Jensen, 237 Iowa 1323, 25 N.W.2d 316; Blundi v. Blundi, supra.

II. The burden of proving by a preponderance of the evidence that conditions subsequent to the decree of divorce have so changed that the welfare of the children demands or renders expedient such modification is on the applicant. See Blundi v. Blundi, supra; Jensen v. Jensen, supra, 237 Iowa 1323, 25 N.W.2d 316, and citations; Beyerink v. Beyerink, 240 Iowa 45, 35 N.W.2d 458, and citations; Paintin v. Paintin, 241 Iowa 411, 41 N.W.2d 27, 16 A. L. R.2d 659. Thus she must show by a preponderance of the evidence that the interest and welfare of the children require such a modification, that the present custody is inadequate and in what manner, and that the change will undoubtedly benefit the children. Nichols v. Nichols, 239 Iowa 1173, 34 N.W.2d 187; Jensen v. Jensen, Beyerink v. Beyerink and Blundi v. Blundi, all supra.

We have held many times that the welfare of the children is the controlling consideration and is superior to the claim or convenience of either parent. Daniels v. Daniels, 145 Iowa 422, 124 N.W. 169; Freese v. Freese, 237 Iowa 451, 22 N.W.2d 242; Jensen v. Jensen, supra. We pointed out in Bennett v. Bennett and Dow v. Dow, both supra, that although the mother was in better circumstances than at the time of the original

decree, that fact alone was not sufficient change of conditions and circumstances under the statute as would warrant the modification of the custodial provision of that decree. We also said in Neve v. Neve, 210 Iowa 120, 125, 230 N.W. 339, 341:

"Mere subsequent facts and circumstances are not enough. The subsequent facts and circumstances must be of such character as to render expedient a change in the original judgment and decree. Thus appellant must prove that such subsequent facts and circumstances affect the well-being of the children, and demand a change in their custody."

 Our principal question then is whether under all of the testimony the circumstances render expedient such a change of custody. Here the record fails, we think, to show any change in circumstances or conditions directly related to the care of the children. We held in the Dow case at page 151 of 240 Iowa that the "trial court was right in not changing an order that gave the father custody, upon a showing that the mother had remarried and established a home and had financial ability to support the child." The case before us is strikingly similar for here also the only real change of conditions and circumstances shown is the remarriage of the defendant-mother. The change from a condition of being without funds, ill, and without a place to care for

the children, to a housewife, married, with a home with suitable facilities to rear children, is a change of circumstances and conditions, but relates to the defendant rather than the children. It is material but not controlling. The children had seen their mother only twice in over four and a half years and had in that time established a close family relationship in the home of their father and grandmother. They are very fond of their father and grandmother and their world now centers about this relationship.

Defendant left her family approximately six months prior to the divorce, and for a year and a half did not see the children at all. While she testified she tried on two occasions, unsuccessfully because they were not at home, no blame is placed upon plaintiff for she had appeared unannounced during the middle of the week. Such was the case when she did see the boys in 1950. Only by good fortune did she then find them home. It was

over two years later that she came to see them in July 1952 for only a short visit. Until her marriage in June 1952 she was employed as a waitress and as a box factory employee in or near Elkhart, Indiana. No satisfactory explanation was offered why she could not have obtained such employment near Davenport where she could have exercised regularly her visitation privileges and thereby bestow upon the children the aid and comfort of a mother's love and understanding. Thus the circumstance of inconvenience due to distance of which she complains is one of her own making and cannot be the basis of consideration here.

We are unable to find in the record any evidence to substantiate the allegation that plaintiff did not co-operate in allowing her to visit the children. The trip made to Iowa in August 1953 brought defendant and her husband to Davenport once again in the midweek when the boys were on vacation. Defendant then went on to Des Moines and returned after the week end had passed. Plaintiff testified he had gone after the boys to have them home over Sunday so they could visit their mother, but that no attempt was made to contact them then.

Nevertheless this unfortunate event gave rise to the application to modify, and with this scanty showing of defendant's efforts to see and know her children, it is difficult to understand why it is necessary now to force the children to journey out of the state, 400 miles to a new and strange surrounding for a period of three weeks each summer, to visit their mother. Perhaps the rebirth of the mother's love and affection should be demonstrated by her sacrifice rather than to require an uprooting of these children to test its sincerity.

III. The best interest and welfare of the children are the paramount concern of this court. It seems their best interest here requires that they remain in the home and under the supervision and influence of their father and grandmother. We have held many times the best interest of the minor children lies in the stability of their environment, and that their custody once determined should remain permanent. See Jensen v. Sorenson, 211 Iowa 354, 233 N.W. 717, and cases cited therein. Often under even stronger facts than appear here we have held that to allow the children to live part of the time in one household and part of the time in another is not to the best interest of the children.

Youde v. Youde, 136 Iowa 719, 114 N.W. 190; Bennett v. Bennett and Freese v. Freese, both supra.

For over four and a half years these children have been under the guidance and influence of the father and grandmother. It has been good and no claim was made that it was not. The defendant's place has been well filled and the boys seem content. They do not refer to the defendant as mother, but as "Cookie", her nickname. Although no condemnation of her is ever made, they do not speak of her nor is there any correspondence between them. The normal mother-son relationship does not exist. To re-establish it is a noble purpose, but whether or not it should be attempted at the price of causing another severe disruption of the physical and emotional well-being of these young men is a serious question. We said in Bennett v. Bennett, supra, 200 Iowa, at page 418:

"Experience has shown that allowing the child to live a part of the time in one household and a part of the time in another, is not only not to the best interest and welfare of the child, but in many instances it is wholly destructive of discipline. It also shows that the party who has the child for a short time, in some instances, sows seeds of discontent, inculcates in the child a spirit of dissatisfaction and rebellion against authority, and devotes the whole time that the child is with that person in trying to wean the child away from the other party in whose custody it is placed by the decree; and that the situation is not for the best interest and welfare of the child, which, as said, should be the fundamental basis on which an order in such matters is founded."

While there is no direct evidence of spite or ill will, there appears some unfriendliness over property rights has occurred, and some rather broad allegations appear in the defendant's application which could easily give rise to the situation referred to above.

We do not seek to penalize this defendant for her conduct which resulted in the granting of a divorce to her husband and do not lose sight of the affection which she probably has for these children. But it does not seem to us that the best interest and welfare of the children require that they be taken far beyond the

watchful and concerned eye of the plaintiff-father and the courts of this state, even for the period of three weeks each year. Our purpose is to guard the children from further grief, disappointment, or other emotional and mental distress. We know little of the home in Ohio, and while we assume it would be good it remains for the applicant to prove by a preponderance of the evidence that it will not prove detrimental to the children. All we do know is that defendant's husband had been divorced and that he did not obtain the custody of his child by that marriage. True, defendant related that an investigation of the home and report had been made by the juvenile court of Lucas County, Ohio, to the "Judge of Domestic Relations in Scott County." The letter is not in evidence and we do not know its contents. However, there is the probability that upsetting circumstances resultant from such a modification equal or overcome the chance of benefits the children may obtain from the effort to re-establish the natural mother-child relationship.

IV. The trial court seemed to feel the granting of three weeks "visitation" rights in Ohio was not a change of custody. We fail to see the distinction. When the boys are in Ohio the custody of the plaintiff will be most insignificant and will be in name only. The boys will be in the actual control of the defendant. In Youde v. Youde, supra, 136 Iowa 719, 722, 114 N.W. 190, 191, we said:

"In virtue of her right of custody, plaintiff is entitled to determine upon the course of conduct of her children, to make selection of their associates, to regulate their habits, oversee in the matter of their education, and, generally, to mold their character. The responsibility is with her, and she ought not to be subjected to any unnecessary increase in the chances of their getting beyond control of her influence, to say nothing of the possibility of their going astray."

It is easy therefore to see the conflicts that usually arise in split custody cases, and only for the most compelling reasons should it be granted. Such do not appear here.

Under the wholesome influence of the father and grandmother these children are doing well in school, attend church regularly, have good habits, and moral surroundings. No com-

pelling reasons appear to demand a change in these regards. In the recent case of Scheffers v. Scheffers, 242 Iowa 563, 570, 47 N.W.2d 157, 161, we said: "We have approved this statement which is applicable here: ' "When a child is legally placed in a home where it receives good treatment and moral training, it should never be removed from that home, except for the most cogent reasons" ' [citing cases]."

A very careful search of this record fails to disclose any cogent reason for this change of custody, even temporarily. Certainly in the absence of more positive evidence, an experiment such as seems apparent from the trial court's ruling cannot be for the best interest of these children and should not be made. It would be unjust to disturb them now on the mere surmise that they would benefit more by a closer relationship with a mother who abandoned them almost five years ago, repentant as she may now be.

V. But there is a more compelling reason why we do not agree with the trial court in sending these young men to Ohio in the care and control of the defendant and her husband. We have said such visitation rights amount to temporary custody and certainly give that parent the control of the children rightfully in that jurisdiction. We have consistently and rightfully frowned upon such a modification which will place the children beyond the jurisdiction of the Iowa courts. In the case of Paintin v. Paintin, supra, 241 Iowa 411, 416, 41 N.W.2d 27, 29, 16 A. L. R.2d 659, 663, we said: "To permit these young children to be taken for a month in each year, perhaps against their will, to another state wherever defendant might live, without proof of changed circumstances *to justify the order* is, to say the least, both unwise and contrary to our decisions." (Italics ours.)

It is becoming increasingly clear that modification of divorce decrees so as to permit removal of the child from the court's jurisdiction should not be permitted unless the welfare of the child would clearly be better served thereby. 27 C. J. S., Divorce, section 313, page 1179; Jensen v. Jensen, Blundi v. Blundi and Paintin v. Paintin, all supra.

It is particularly hazardous to allow children permanently in the custody of a resident to be placed temporarily

and from time to time in the custody of a nonresident. It not only often results in costly and lengthy litigation for the resident custodian (Blundi v. Blundi, supra), but is conducive to "interstate bickering" over the custody of children. It is obvious such conflicts would be detrimental to the best interest of the children. Our experiences in the Jensen v. Jensen, Paintin v. Paintin and Blundi v. Blundi cases, all supra, well illustrate the danger. The prevailing view in most states, including Iowa and Ohio, is that the courts of the state in which the children are physically present have jurisdiction of the matter of custody, and such courts may award custody upon proof satisfactory to them of an alleged change of circumstances. See 4 A. L. R.2d 41. We so held in the recent case of Helton v. Crawley, 241 Iowa 296, 41 N.W.2d 60. Also see Barnett v. Blakley, 202 Iowa 1, 209 N.W. 412, and Pelton v. Halverson, 240 Iowa 184, 35 N.W.2d 759. Thus we are not surprised at plaintiff-appellant's great concern over any modification which will in effect place the children in a foreign jurisdiction when he may be called upon to defend his custodial rights once fairly and conclusively obtained by him under the original circumstances. It is not mere whim or fictitious objections that he voices, nor a remote danger to the present peace and security of the children. In the Ohio decisions in In re Stromberg's Adoption, Ohio App., 58 N.E.2d 88, 92, the court said: "* * * a judgment of a court of one state awarding the custody of a minor child is not res judicata in a proceeding before a court of another state, except as to facts and conditions before the court upon renditions of the foreign decree. * * *."

In the case of Jensen v. Jensen, supra, 237 Iowa 1323, 1330, 25 N.W.2d 316, 320, the opinion quotes with approval from 27 C. J. S., Divorce, section 313, page 1179, as follows: " 'It is against the policy of the law to permit the removal of the child from the jurisdiction unless its welfare would be better subserved thereby, and ordinarily custody should not be awarded to a nonresident * * *.' "

This is particularly true of temporary custody for, as heretofore pointed out, it often creates further trouble. Also see Paintin v. Paintin, supra, and annotations 15 A. L. R.2d 432, 455. So it must be clear that there is no certainty that while

these boys are in the foreign jurisdiction some action there may not be taken to deprive the father and the Iowa court of further authority in regard to their custody. If the children were not returned as required in the modification order, costly and time-consuming as well as heart-rending litigation would likely result, engulfing these young boys in unwelcome experiences that can be and should be avoided for their best interest and welfare.

If defendant wishes to renew her normal functions of motherhood from which she has had a five-year vacation, she will find some way to visit them regularly at their present, satisfactory and peaceful domicile. If she cares, she will arrange to do so. Under the record here any modification of the rights of visitation should not include the right to take the children from the jurisdiction of this state nor from the actual custody of the plaintiff-father. Perhaps to encourage a closer mother-son relationship the court would be warranted in changing the times or places within the county or state whereby the mother could have extended visits with her children without too great a disturbance of their present family life. We feel, however, that the trial court here went too far and that the record does not justify its broad and significant modification. While a mother's love is the most wholesome influence in the world, these lads so far have had to find it in their grandmother for over five years. There it should stay until it can be replaced by the natural mother's love under circumstances that will not likely again endanger their normal growth and happiness. Reversed and remanded for dismissal of defendant's application for modification.—Reversed and remanded.

GARFIELD, C.J., and BLISS, WENNERSTRUM, SMITH, and THOMPSON, JJ., concur.

HAYS and MULRONEY, JJ., dissent.

OLIVER, J., takes no part.

HAYS, J. (dissenting)—While I feel that the decree appealed from should be modified, I do not agree that it should be reversed.

The case involves the question of the right of divorced parents to know and associate with their children. In 1949 the plain-

tiff and defendant were divorced and the custody of their three minor boys, age six, seven and eight, was granted to the father. The decree allowed the mother to visit them during certain hours on Saturday or Sunday of each week. For some six months prior to the decree, the mother was living at Goshen, Indiana, which had been her former home. The divorce was not contested and the instant record does not disclose the grounds upon which the decree was granted. One may, however, search this record with a microscope and not find a single word derogatory of either parent. The children, since the divorce, have lived with their father in his mother's home and have undoubtedly received good care. At the time of the divorce the mother was working as a waitress in Elkhart, Indiana, and had no home to which she could have taken the children. It also appears she had no financial security. Since then she has married and now has a modern and comfortable home at Maumee, Ohio, and a steady and reliable husband who is willing to have the children in the home.

It should be noted that the petition herein asks only that the defendant-mother have the children for three months in the summer, and the decree, which the majority reverses, grants her the right to have them for a three-weeks visit.

The majority opinion deals at considerable length upon our well-recognized rule that there must be a change of circumstances since the divorce was granted, before a trial court may change or modify a divorce decree. I have no complaint with this rule, but do disagree with the statement in the majority opinion that no change of circumstances is shown, such as to permit a modification. The request for a change of the decree only as it applies to the visitation rights is such that the mere fact of the mother having a home to take the children is sufficient to grant the trial court the right to modify, if in its discretion such appears to be desirable.

The majority opinion treats a request to change as to a right of visitation the same as though it was a change of custody. I do not agree that it is. "Custody" means control of a person with such actual or constructive possession as fulfills the purpose of the law or duty requiring it. "Visit" means the act of visiting a person; a short stay, usually longer than a call, sometimes involving brief residence. Both of the above defini-

tions are found in Webster's New International Dictionary, Second Edition. In Burge v. City and County of San Francisco, Cal. App., 256 P.2d 382, 386, it states that the essential element of custody of a child of divorced parents is the right to make decisions regarding the child's care, control, education, health and religion. In my judgment, visitation rights do not contain this element.

This court has recognized the difference between custody and visitation, as used in child custody cases. In re Adoption of Chinn, 238 Iowa 4, 8, 25 N.W.2d 735, 737, cites with approval Hardesty v. Hardesty, 150 Kan. 271, 273, 92 P.2d 49, 50, to the effect that " 'right of visitation does not give custody.' " See also In re Kelly's Adoption, 47 Cal. App.2d 577, 118 P.2d 479. In the recent case of Stillmunkes v. Stillmunkes, 245 Iowa 1082, 65 N.W.2d 366, this court clearly recognizes the difference. At page 1087 of 245 Iowa, page 369 of 65 N.W.2d, it is said, "We find no reason to disagree and therefore agree with the trial court in its determination that the care and custody of the plaintiff [action was habeas corpus for the custody of a child] should remain with the mother," and yet it modified the decree as to visitation. See also Rader v. Davis, 154 Iowa 306, 307, 134 N.W. 849, 38 L. R. A., N.S., 131, Ann. Cas. 1914A 1245; Fitch v. Fitch, 207 Iowa 1193, 224 N.W. 503; Jensen v. Jensen, 237 Iowa 1323, 25 N.W.2d 316.

As to the modification of the decree: The record shows that the mother desires to take the children out of the jurisdiction of this state and into the state of Ohio. The majority opinion calls attention to the danger of the mother, once she gets the children into Ohio, commencing habeas corpus for the custody thereof. Under the recognized rule, here and elsewhere, the provision of a divorce decree of another jurisdiction, as it pertains to child custody, has no binding effect upon the courts of another jurisdiction. Under the theory of "what is best for the children," the court then having the children before it will determine the question as it sees fit. I have stated in the past, and I still think, that such a rule is highly detrimental to the stability of the child rather than beneficial, but the rule exists and must be recognized. Helton v. Crawley, 241 Iowa 296, 41 N.W.2d 60.

I think all questions concerning both custody and visitation belong in the Scott District Court. To permit the children to be taken into Ohio creates at least a jeopardy, the degree thereof depending upon the secret intentions of the mother. On the other hand I am old-fashioned enough to believe that children, the innocent victims of a wrecked home, should have the opportunity to know their parents (both of them), and the parents to know their own children unless it clearly appears that such association would be detrimental to the children. It is true the record shows that at the time of the divorce the mother was living apart from the father; that she consented to the father having the custody; that she saw them but a few times between July 8, 1949, the date of the divorce, and 1953, when this action was commenced. But the record also shows that at the time of the divorce she had no home in which to take them; she was without finances and lived several hundred miles from the home of the father. I can find nothing in the record upon which to base an assumption that the mother has abandoned them or that her mother's love for them is gone, and there is absolutely nothing in the record to show that association with her will be detrimental.

I would modify the decree by providing that before the children were removed from the state, the mother should post a bond with the clerk of the Scott County Court, conditioned upon the return of the children upon completion of the visitation period. I think a bond of $1000 would not be unreasonable. True, this does not guarantee their return, but it would, in my opinion, materially reduce the doubt thereof. I think the benefits far outweigh the risks.

As so modified, I would affirm the decree of the trial court.

MULRONEY, J., joins in this dissent.