**STATE of Iowa, Appellee,**

v.

**John C. DAVIDSON, Appellant.**

**No. 55665.**

Supreme Court of Iowa.

April 24, 1974.

Stephen M. Terrill, Maurer & Jones, Ames, for appellant.

Richard C. Turner, Atty. Gen., Thomas McGrane, Asst. Atty. Gen., and Donald L. Smith, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, REYNOLDSON and HARRIS, JJ.

LeGRAND, Justice.

Following his conviction for carrying a concealed weapon in violation of § 695.2, The Code, defendant was sentenced to serve a term of not more than five years in the penitentiary at Fort Madison as provided in § 695.3, The Code. He appeals from that judgment, and we affirm the trial court.

Defendant's various complaints raise two issues for our review. He claims, first, that he was entitled to a directed verdict and, second, he asserts the trial court erred in refusing to submit his proposed instruction on the question of intent.

We set out briefly the facts upon which a determination of this appeal depends.

Defendant was a tenant in an apartment house in Ames, occupying quarters on the third floor together with his sister and brother-in-law. Altogether there are 33 separate living units in the building.

A corridor runs through the center of the building, with apartments abutting on both sides. The building is entered by means of a door on the street level at either end of the building. At each end, too, is a stairway leading to the various building levels. This stairway is separated from the apartment area on each floor by fire doors.

The tenants have keys to their individual apartments and to the mailboxes assigned to them. However, there are no keys to the main building entrances because these doors are not locked. The building is open to tenants, visitors, tradespeople and, as the building superintendent put it, "the general public."

The doors to the individual apartments are recessed about 28 inches in from the corridor walls. Each door is provided with a peep hole by which occupants may see into the hallway but those in the hallway cannot see into the apartments.

On the day of the events under review, three officers of the Ames Police Department went to the apartment house for the purpose, as it was euphemistically put, of "serving legal papers" on defendant. Actually they went there to arrest him on charges unrelated to the present inquiry. Arriving at defendant's apartment, one of the detectives rang the doorbell while the other two stationed themselves behind the fire doors located only about two or three feet from the apartment door. Although the officer could detect activity inside, no one answered his ring, and one of the officers was dispatched to get the manager. The other two waited behind the fire doors. Before that officer returned, defendant opened the door, stepped into the hallway, and started toward the fire doors. The two police officers accosted him and placed him under arrest. At this time, a loaded 22 caliber pistol was taken from inside defendant's waistband, where it was concealed.

These are the circumstances which led to defendant's conviction for carrying a concealed weapon.

I. Defendant insists he was entitled to a directed verdict because the uncontradicted evidence shows he was at a place where he was entitled to carry a concealed weapon. He argues first he did not leave his apartment at any time; or, in the alternative, his presence in the corridor immediately adjacent to his apartment brings him within the exception of § 695.2, the pertinent part of which is as follows:

"It shall be unlawful for any person, except as hereinafer provided, to go armed with or carry a * * * pistol [or] revolver * * * concealed either on or about his person, except in his own dwelling house or place of business or other land possessed by him. No person shall carry a pistol or revolver concealed on or about his person * * * except in his dwelling house or place of business or other land possessed by him, without a permit therefor as herein provided."

There is no claim defendant had a permit to carry this gun. His argument is based on the claim that he comes within the statutory exception—that he was in his own dwelling house or other land possessed by him.

Defendant's argument on this point takes two directions. First, he urges that he did not leave his apartment and therefore comes clearly within the statutory exception. However, although the matter is disputed, there is ample evidence from which the jury could conclude against defendant on this issue, and we are bound by that finding.

Defendant also claims that when he was in the common hallway adjacent to his apartment he was at a place where he was entitled to be under his lease. From this

he argues the hallway falls within the statutory term "dwelling house or other land possessed by him," making it a place he was permitted to carry a concealed weapon under § 695.2.

We seem never to have decided this precise question, and there is surprisingly little authority on it from other jurisdictions. What there is, however, is squarely against defendant's position. In White v. United States (D.C.App.1971), 283 A.2d 21, 23, the defendant raised the same argument when he was charged with carrying a concealed weapon in the corridor on the floor above his own apartment. Under a statute quite similar to ours, the court there held a corridor used in common with tenants and other persons was not within the definition of dwelling house for the purposes of permitting one to carry a concealed weapon. A similar result was reached in Wilson v. State (Tex.Cr.App. 1967), 418 S.W.2d 687, 688, where a conviction was upheld on a charge of carrying a concealed weapon in a common driveway used by the defendant and other tenants of a multiple dwelling house.

We believe this is the only realistic interpretation of statutes such as § 695.2. The rule for which defendant contends would permit one to wander about apartment buildings inhabited by hundreds of persons simply because his own living quarters were located somewhere in the recesses of that same building. Obviously the legislature intended no such result, and we reject the defendant's argument to the contrary.

We hold the trial court properly denied defendant's motion for a directed verdict.

II. Defendant next insists the trial court erred in refusing to give the following requested instruction:

"The state must establish beyond a reasonable doubt that the defendant consciously or intentionally carried the weapon in question from a place where one may lawfully carry a weapon, concealed or otherwise, to a place where one may not lawfully carry a concealed weapon."

Specific intent is not an element of this crime. In State v. Baych, 169 N.W.2d 578, 585 (Iowa 1969), we said:

"Specific intent is not made an essential element of the crime of carrying a concealed weapon. The crime charged is one of general intent, and such intent is presumed from the doing of the prohibited acts, without more."

Under the record in this case, we find defendant was not entitled to the requested instruction. Defendant refers us to Uniform Jury Instructions, # 530.3, as authority. However, a note to that instruction expressly states it is to be given when a defendant claims he carried the weapon accidentally or unintentionally.

We considered a related problem in State v. Williams, 184 Iowa 1070, 1073, 169 N.W. 371, 372 (1918), where we held one who carried a concealed weapon without knowing it was on his person was not guilty of violating this statute. In that case, the defendant claimed he was unaware a revolver was in the pocket of the coat he was wearing. We there held proof of such fact would render him innocent of the charge. We said an instruction to that effect should have been given.

There is no such circumstance in the matter now before us. Defendant testified he had been to a business establishment in downtown Ames and had returned to his apartment only five minutes before the police officers arrived. He said his pistol was kept in his bedroom and was there on that afternoon. He also related that before opening the door in response to the officer's ring, he went to the bedroom, got his pistol and placed it in his waistband. When asked why he did so, he replied that he wanted to be ready to defend himself "in case it was somebody that maybe didn't like me for some reason."

■ Under such a record, defendant was not entitled to the requested instruction. His own testimony establishes he armed himself immediately before going to the door. The trial court correctly refused the request in the absence of any evidence to support it.

There is no merit to this claim.

■ III. Defendant also insists the trial court should have explained the meaning of dwelling house to the jury. · We agree with the trial court that dwelling house is a term of ordinary meaning which the jury could understand without explanation. Furthermore, defendant did not preserve this alleged error and it is not properly here for review.

Finding no reversible error, we affirm the trial court.

Affirmed.