310 S.E.2d 481

**STATE of West Virginia**

v.

**Gerald A. RUNNER.**

**No. 15672.**

Supreme Court of Appeals of West Virginia.

Dec. 15, 1983.

Frederick S. Wilkerson, Asst. Atty. Gen., Charleston, for appellee.

Edwin C. Runner, Kingwood, for appellant.

McGRAW, Chief Justice:

Gerald A. Runner was convicted of public intoxication in the Circuit Court of Preston County. He appeals, alleging that the trial court erred by refusing to direct a verdict of acquittal and by refusing to set aside the jury's verdict. The appellant asserts that he was not in a public place at the time of the alleged offense.

The State's case was presented primarily through the testimony of Trooper R.J. Hicks of the Department of Public Safety. Trooper Hicks testified that while on patrol outside the town of Newberg on the evening of January 3, 1981, he observed a pickup truck cross the highway in front of him. He noted that one of its taillights was not working. With the intention of issuing a warning citation to the driver of the pickup truck, Trooper Hicks switched on the flashing lights atop his police cruiser, sounded his siren and followed the truck into Newberg.

The driver of the pickup truck did not respond to the trooper's signals to stop. The truck continued into town, came to a stop sign and then turned right up a hill towards the Masonic Lodge. Because the road was icy, Trooper Hicks was unable to follow the truck up the hill in his cruiser. He parked his car, and continued the pursuit on foot.

Trooper Hicks found the pickup truck in the parking lot of the Masonic Lodge. He approached the driver's side of the truck and asked the driver, Roscoe Stevenson, for his license. When Stevenson could not produce a valid license, the trooper asked him to step out of the vehicle. Stevenson complied and was then placed under arrest.

Trooper Hicks next directed the appellant, who was seated on the passenger's side of the pickup truck, to get out of the vehicle. The appellant complied with the officer's command, and walked around the front of the truck to the driver's side where Trooper Hicks and Stevenson were standing. Upon observing the appellant, Trooper Hicks concluded that he was drunk and arrested him for public intoxication.

During trial, the appellant moved for a directed verdict on the ground that the State had failed to show that the appellant was intoxicated in a "public place." The court denied the motion and instructed the jury, over the appellant's objection, that "[a] person riding in a private motor ve-

hicle is in a public place if the motor vehicle in which he is riding is on a public road." The jury found the appellant guilty of public intoxication. The appellant renewed his objection and moved to set aside the verdict. The court denied the motion. The appellant was subsequently fined $50 and costs.

Appearing in a public place in an intoxicated condition is a criminal offense in West Virginia proscribed by W.Va.Code § 60–6–9 (Cum.Supp.1983), which provides that "[a] person shall not ... [a]ppear in a public place in an intoxicated condition ...." "Public place" is defined in W.Va. Code § 60–1–6 (1977 Replacement Vol.), as "any place, building or conveyance to which the public has, or is permitted to have access, including restaurants, soda fountains, and hotel dining rooms and lobbies, and corridors of hotels, and any highway, street, lane, park or place of public resort or amusement."

The constitutionality of W.Va.Code § 60–6–9 was upheld in *State ex rel. Harper v. Zegeer*, 170 W.Va. 743, 296 S.E.2d 873 (1982), where we recognized that the public presence of intoxicated individuals "is a potential threat to their own and others' well-being, is often offensive, even obnoxious to other people, and the State has a legitimate right to get them off the streets or out of whatever public area in which they are gamboling." 170 W.Va. at 749, 296 S.E.2d at 878. We held in *Harper* that law enforcement officers have the power and duty to arrest and hold in custody, without a warrant, for the purpose of bringing before a magistrate forthwith and without unnecessary delay, any person who in their presence appears in a public place in an intoxicated condition. 170 W.Va. at 753, 296 S.E.2d at 882. *See also State v. Mullins*, 135 W.Va. 60, 62 S.E.2d 562 (1950); W.Va.Code § 62–1–5 (1977 Replacement Vol.); W.Va.R.Crim.P. 5(a).

The appellant asserts that a person riding in a private conveyance on a public street cannot be found guilty of being intoxicated in a "public place" as that term is used in W.Va.Code § 60–6–9 and defined in W.Va.Code § 60–1–6. In support of this assertion the appellant argues that because W.Va.Code § 60–1–6 specifies only public conveyances as coming within the definition of a "public place," the statute must be construed as providing that a person enclosed in a private conveyance, albeit on a public street, is not in a "public place."

Courts in several jurisdictions have recognized that statutes proscribing public intoxication serve two general purposes. First, they are designed to prevent nuisance and annoyance to members of the general public. Second, they also serve as a protection against offenders who endanger the well-being of themselves or others. *See, e.g., Berry v. Springdale*, 238 Ark. 328, 381 S.W.2d 745 (1964). *See also People v. Belanger*, 243 Cal.App.2d 654, 52 Cal.Rptr. 660 (1966); *Application of Hendrix*, 539 P.2d 1402 (Okl.App.1975). In some jurisdictions these purposes are explicitly recognized by statutes which require as an element of the offense of public intoxication the endangerment of self or others, or other conduct constituting an annoyance to others in the vicinity of the offender. *See, e.g., People v. Olson*, 18 Cal.App.3d 592, 96 Cal.Rptr. 132 (1971); *Scarborough v. State*, 231 Ga. 7, 200 S.E.2d 115 (1973); *United States v. Crutchfield*, 418 F.Supp. 701 (W.D.Pa. 1976); *Dickey v. State*, 552 S.W.2d 467 (Tex.Cr.App.1977). Other courts have recognized these principles without the benefit of express statutory language. *See, e.g., Berry v. Springdale, supra; People v. Monfette*, 23 Misc.2d 1096, 201 N.Y.S.2d 604 (N.Y.Co.Ct.1960). We recognized these purposes as aims of our statutory law in *State ex rel. Harper v. Zegeer, supra*. It is apparent upon consideration of these purposes, that W.Va.Code § 60–6–9 is designed to protect against public conduct which disturbs the public peace or which endangers the well-being of the offender or others.[1]

---

1. Arrest for the offense of public intoxication also functions as a trigger mechanism by which chronic public inebriates may be evaluated for placement in appropriate alcohol treatment programs. We recognized in *Harper v. Zegeer, supra*, that our law "does not contemplate that inebriated persons, as defined by law, should be detained in jails or lockups." 170 W.Va. at 755,

As with any criminal offense, a warrantless arrest for the offense of public intoxication must be supported by probable cause to be valid. We held in syllabus point seven of *State v. Craft*, 165 W.Va. 741, 272 S.E.2d 46 (1980), that "[p]robable cause to make an arrest without a warrant exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to warrant a prudent man in believing that an offense has been committed." *See also* Syllabus Point 3, *State v. Duvernoy*, 156 W.Va. 578, 195 S.E.2d 631 (1973); Syllabus Point 3, *State v. Duvernoy*, 156 W.Va. 578, 195 S.E.2d 631 (1973); Syllabus Point 1, *State v. Plantz*, 155 W.Va. 24, 180 S.E.2d 614 (1971). We have traditionally recognized that the facts and circumstances necessary to establish probable cause for an arrest for public intoxication may be based on the arresting officer's observations of the offender. *State v. Drake*, 170 W.Va. 169, 291 S.E.2d 484 (1982); *State v. Mullins, supra*.

"Intoxication" has been defined by numerous courts in various manners. *See, e.g.*, 48 C.J.S. *Intoxicate* 258–259 (1981); *see also* cases collected at 22A Words and Phrases, *Intoxication* (1958 & Supp.1983). The majority of these definitions focus on the impaired mental or physical capacity of the offender which results from the use of intoxicating agents. Accordingly, in order for probable cause to exist for the offense of public intoxication, the arresting officer must observe some manifestations of impaired mental or physical capacity on the part of the offender which result from the use of alcohol or other intoxicating substances. For example, in *State v. Drake, supra*, the arresting officers' observations of the physical demeanor and slurred speech of the defendant, coupled with the presence of an open beer bottle, were held to be sufficient to establish probable cause for public intoxication. 170 W.Va. at 171, 291 S.E.2d at 486–487.

Conduct of a passenger [2] in a private conveyance which does not outwardly manifest evidence of intoxication does not present probable cause for an arrest for public intoxication. The mere act of riding as a passenger in a private vehicle in a socially inoffensive manner is insufficient to sustain a finding of probable cause to arrest for public intoxication. Indeed, to interpret W.Va.Code § 60–6–9 as permitting the arrest for public intoxication of a person who is merely a passenger in a private vehicle upon a public road, could transform the sober, responsible, driver who drives a drunk friend home into a criminal actor.[3]

Consistent with the dual purpose of our public intoxication statute, the public manifestations of mental or physical incapacity which present probable cause for public intoxication may take the form of conduct which constitutes either an annoyance or nuisance to the general public,[4] or

---

296 S.E.2d at 885. When upon presentment of an intoxicated person before a magistrate, a finding is made that the accused constitutes a danger to himself or others, the magistrate has a duty to order that the defendant be remanded to the custody of the Department of Health for treatment. *See State ex rel. Harper v. Zegeer, supra*. The law provides facilities for the care and treatment of alcoholics and has financed such treatment by the dedication of profits accruing from the sale of alcoholic liquors. *See* W.Va.Code § 60–3–9c (1977 Replacement Vol.); *McGraw v. Hansbarger*, 171 W.Va. 758, 301 S.E.2d 848 (1983). Over 77 million dollars in revenue was generated by the sale of alcoholic liquor in West Virginia in 1982. *See West Virginia Alcohol Beverage Control Commissioner 48th Annual Report*.

2. We wish to make clear that we are concerned in this case only with *passengers* in private vehicles, and not drivers, whose conduct with respect to the operation of motor vehicles while under the influence of intoxicating substances is stringently regulated by statute. *See, e.g.*, W.Va. Code § 17C–5–2 (Cum.Supp.1983).

3. At common law, in the case of misdemeanors, there are no accessories to the crime; all defendants who participate in its commission are liable as principals. *See* Comment, *Criminal Law-Accessory Before the Fact to Misdemeanor—A Legal Impossibility?*, 74 W.Va.L.Rev. 402 (1972); *see also* Note, *Liability of Unmentioned Accessories to Certain Statutory Crimes*, 25 Va.L. Rev. 844 (1939); 1A Michie's Jurisprudence, *Accomplices and Accessories* § 5 (1980).

4. Strictly speaking, intoxication alone does not ordinarily constitute a breach of the peace. *State v. Mullins, supra*. Breach of the peace is a common-law offense in this jurisdiction requiring actual or threatened violence. *See State v.*

which would lead a reasonable person to believe that the offender poses a danger to himself or others. Thus, an intoxicated person who is a passenger in a private conveyance on a public highway, and who publicly manifests his intoxication by offensive conduct, is subject to arrest for public intoxication, as well as the offender who endangers the public safety, or who invites public attention by giving the appearance of being in distress and in need of possible assistance. *See, e.g., State v. Kersh,* 313 N.W.2d 566 (Iowa 1981). *Cf.* 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 7.4(f) (1978).

As indicated by the instructions submitted to the jury, the State's theory of this case is that the appellant was intoxicated while a passenger in the pickup truck travelling upon the public highway. However, it is clear from the record that the conduct of the appellant while a passenger in the pickup truck was insufficient to constitute probable cause for arrest for public intoxication. The arresting officer recited no facts or circumstances in his testimony below from which a prudent person could form a belief that the appellant was intoxicated while inside the truck. The officer did not observe any manifestations of intoxication until after the appellant was ordered out of the vehicle in the parking lot of the Masonic Lodge. Accordingly, the prosecution cannot rely on the appellant's conduct after he exited the truck to show that he was intoxicated while riding as a passenger in a private vehicle upon a public road. *See Brown v. State,* 38 Ala.App. 312, 82 So.2d 806 (1955). Unlike *State v. Drake, supra,* where a violation of a municipal open bottle ordinance was held to constitute sufficient reason to require a passenger in an automobile to step outside the vehicle, whereupon the passenger was arrested for public intoxication, there is no indication in this case that unlawful or threatening conduct by the appellant while a passenger in the vehicle, or the existence of other exigent circumstances, justified the officer in requiring the appellant to exit the truck.

Because there were no public manifestations of evidence upon which to base probable cause for public intoxication, the appellant's arrest was unlawful and his conviction must be reversed. *See generally State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974).

Reversed.

*Steger,* 94 W.Va. 576, 119 S.E. 682 (1923). The making of disturbing noises on a public street by one in a state of intoxication was held to constitute a breach of the peace at common-law in *People v. Johnson,* 86 Mich. 175, 48 N.W. 870 (1891). *See generally* 12 Am.Jur.2d, *Breach of Peace and Disorderly Conduct,* § 8 (1964).