**STATE of Iowa, Appellant,**

v.

**Jennifer Lynn BOOTH, Appellee.**

**City of Iowa City, Appellant,**

v.

**Jennifer Lynn Booth, Appellee.**

No. 02–1315.

Supreme Court of Iowa.

Oct. 8, 2003.

Thomas J. Miller, Attorney General, Cristen C. Odell, Assistant Attorney General, Janet Lyness, Assistant County Attorney, and Susan Dulek, Assistant City Attorney, for appellants.

Chad W. Thomas, Iowa City, and Jill Novak, Student Legal Intern, Iowa City, for appellee.

CADY, Justice.

In this appeal, we must determine whether the front steps and common hallway of an apartment house are public places. The appellee was charged with two alcohol-related offenses premised on her being in a public place at the time the offenses were committed. She was subsequently found guilty of both charges by a judicial magistrate, but her convictions were overturned by the district court, which concluded the front steps and hallway of the house were not public places. The State challenges the district court's determination with this appeal. For the reasons that follow, we reverse the decision of the district court and remand for entry of an order affirming the judgment and sentence of the judicial magistrate.

## I. Background Facts and Proceedings.

On August 11, 2001, an officer from the Iowa City police department responded to a report of a fight at a local apartment house. After arriving at the scene, the officer approached the appellee, Jennifer Lynn Booth, one of the tenants of the house, who was standing on the exterior steps of the building's entryway. Booth had not been directly involved in the fight, but had information to provide to the officer. She and the officer began a conversation on the front steps but soon moved in to the common hallway of the house to continue their conversation. At all times during the conversation, Booth was intoxicated and had an open container of alcohol in her possession. These facts led the officer to issue Booth two citations, one for public intoxication and one for possession of an open container of alcohol in a public place.

A bench trial on Booth's offenses commenced before a judicial magistrate on November 20. Booth conceded every element of the two charges against her except for the question of whether the offenses occurred in a public place. Not surprisingly, the evidence presented at the trial was focused on defining the character of the apartment house, the front steps, and the common hallway.

The evidence revealed that the house contained six, two-bedroom apartments with approximately fourteen to sixteen total residents. To access the apartments,

all persons had to use the exterior steps, front entryway, and common hallway of the house. A washer and dryer were provided for the residents' use and were kept in the common hallway. Residents were also permitted to use a small, six-space parking lot on the grounds. In addition to the tenants, the defendant testified to having seen guests of the tenants, mail carriers, and delivery people in the house. However, there was no gate or fence around the house preventing a person from walking up to the front steps. Nor were there any signs posted at the front steps or common hallway indicating that access to those areas was restricted. Moreover, no locks or other security devices prevented entry into the common hallway from the front steps.

After taking this evidence under advisement, the judicial magistrate determined that the front steps and common hallway of the apartment house were public places and found Booth guilty of both charges. Booth appealed to the district court pursuant to Iowa Rule of Criminal Procedure 2.73. After reviewing the record in the case, the district court determined the magistrate's decision was in error in that the front steps and hallway were not public places. The district court vacated and set aside Booth's convictions, sustained her appeal, and dismissed the charges against her. The State sought and was granted discretionary review of the district court's decision.

## II. Standard of Review.

We recently had the opportunity to summarize our standard of review for issues of statutory interpretation in *In re Detention of Swanson*, 668 N.W.2d 570, 574–75 (Iowa 2003):

> We focus on the intent of the legislature when construing [a] statute, looking first and foremost to the language it chose in

creating the act. *Gardin v. Long Beach Mortgage Co.*, 661 N.W.2d 193, 197 (Iowa 2003). We read the statute "as a whole and give it 'its plain and obvious meaning, a sensible and logical construction,'" which does not create an "impractical or absurd result." *Id.* (quoting *Hamilton v. City of Urbandale*, 291 N.W.2d 15, 17 (Iowa 1980)). If it is necessary, "we look to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage" to aid our interpretation. *Id.* We review the district court's construction of the statute for correction of errors at law. *See State v. Mitchell*, 568 N.W.2d 493, 500 (Iowa 1997).

## III. Defining a "Public Place."

■ Booth was charged with two alcohol-related offenses due to her presence and conduct at the apartment house. The first charge was for public intoxication as defined by the Iowa Code:

> A person shall not use or consume alcoholic liquor in any public place except premises covered by a liquor control license.... A person shall not be intoxicated or simulate intoxication in a *public place*. A person violating this subsection is guilty of a simple misdemeanor.

Iowa Code § 123.46(2) (2001) (emphasis added). She was also charged with possession of an open container of alcohol in a public place, an offense defined by the Iowa City City Code:

> Possession Prohibited: It shall be unlawful for any person to possess alcoholic beverages in any open container upon the public streets or alleys, including the sidewalk within the public right of way, and in any *public place*, except premises covered by a license or permit, and when applicable a public right of way easement agreement.

Iowa City City Code § 4-5-5(B) (emphasis added).

To secure Booth's convictions, the State had the burden of showing that she was in a public place at the time the offenses were committed. A "public place" in this context is defined as "any place, building, or conveyance to which the public has or is permitted access." *Id.* § 123.3(27). The Iowa City City Code uses this definition as well. Iowa City City Code 4-5-1 ("This chapter shall incorporate by reference the definitions, restrictions, requirements and limitations contained in chapter 123, code of Iowa, as amended."). Thus, we must determine whether Booth was in a place "to which the public has or is permitted access" when the offenses were allegedly committed. *Id.* § 123.3(27).

Booth argues that we should adopt the approach taken by the district court and apply our holding in *State v. Lake*, 476 N.W.2d 55 (Iowa 1991) in her favor. In *Lake*, we determined that the defendant was not in a public place for purposes of the public intoxication statute while she was sitting in her friend's vehicle even though the vehicle was in a public location. *See id.* at 55–56. In reaching our ultimate conclusion in *Lake*, we observed, "[a] right of public access is the touchstone of the section 123.3[(27)] definition of public place." *Id.* at 55. Launching from this observation, Booth asserts the front steps

and common hallway of the apartment house are not public places because only tenants, invited guests, and perhaps other members of the public who would have a legitimate reason to enter the building were permitted access to the building. Thus, she believes, because neither the tenants nor their invited guests should be considered part of the *general* public, no member of "the public has or is permitted access" and the front steps and hallway are not public places. Iowa Code § 123.3(27). In essence, Booth argues public access to a place or building under the statute requires access to be permitted to *all* the public.[1]

The State responds to Booth's argument by attempting to undercut what it believes is a far too permissive interpretation of the statute. It argues that the adoption of Booth's approach to the definition of "public place" would be contrary to the purpose of alcohol consumption control laws and would permit offenders to evade charges in areas that the laws were meant to cover. Moreover, the State takes issue with what it believes is a mischaracterization of the nature of the apartment house and Booth's right to act within it, noting her lease explicitly conveyed to her the control of only her apartment and not the entire house.

At the core of both parties' arguments is their disagreement over the extent "to

---

1. Throughout the proceedings in her case, Booth has further supported her position through invocation of an analogy to the front steps of a single-family home, which, she asserts, clearly would not be a public place for purposes of the public intoxication or open container laws. The district court accepted this analogy as proof of the private nature of the common areas of the apartment house. However, we believe the front steps of a single-family home are clearly distinguishable from the front steps of Booth's apartment house. While the front steps of a single-family home permit regular access for the

homeowners and their guests, the front steps of the apartment house are a *common* thoroughfare through which each tenant and their guests must pass. Moreover, while a single individual or family may bar access to the front steps of a single-family home, no single tenant holds the right to bar access to the apartment house. Ultimately, these distinguishing qualities convince us to avoid applying Booth's analogy in resolving the issues presented in this case. We leave for another day any other questions related to the character of the front steps of a single-family home.

which the public has or is permitted" access to the front steps and common hallway. *Id.* The controversy over this issue belies underlying issues related to defining the nature of "the public" in this context and what it means for the public to have access to a location. We agree that *Lake* has an important role in resolving these questions, but the legislature's intent must guide our ultimate resolution. *Gardin,* 661 N.W.2d at 197. As in *Lake,* we believe it is necessary to place the statute's language in proper context to ensure its proper construction. *See Lake,* 476 N.W.2d at 56.

We have not previously had the opportunity to specifically consider the legislature's intent in barring public intoxication, nor have we considered the intent behind Iowa City's open container law. Yet, both are tied closely—by placement in the code or by invocation of its provisions—to Iowa Code chapter 123. This connection warrants recognition of the broader statutory context of both offenses at issue in this case. Chapter 123 constitutes the Iowa Alcoholic Beverage Control Act, a statute created "for the protection of the welfare, health, peace, morals, and safety of the people of the state" which "shall be liberally construed for the accomplishment of that purpose." Iowa Code § 123.1. This statement of legislative intent is consistent with the conclusions of "several jurisdictions" that,

statutes proscribing public intoxication serve two general purposes. First, they are designed to prevent nuisance and annoyance to members of the general public. Second, they also serve as a protection against offenders who endanger the well-being of themselves or others.

*State v. Runner,* 172 W.Va. 720, 310 S.E.2d 481, 483 (1983). We approach this case with our legislature's intent and these statutory purposes in mind.[2]

In arguing for its application, Booth focuses on our conclusion in *Lake* that "[a] right of public access is the touchstone of the section 123.3[(27)] definition of public place." 476 N.W.2d at 56. However, *Lake* was premised on two other observations that must be kept in mind in resolving this appeal. Although our "touchstone" comment was intended as a summation of the definition of a public place, we also focused on the statutory language of the public intoxication law, concluding that, "while defendant was occupying the privately owned motor vehicle either on the public street or in the public parking lot, she was in a conveyance to which the public was not permitted access," thus making the vehicle private. *Id.* This conclusion was bolstered by our recognition that there was a "private nature of automobiles" established by "nearly thirty years of fourth amendment jurisprudence" that had made clear

---

2. Although "several jurisdictions" have recognized the underlying purposes of laws such as those at issue in this case, each jurisdiction's interpretation of those laws turns on particular statutory language and interpretive principles. *State v. Runner,* 172 W.Va. 720, 310 S.E.2d 481, 483 (1983). Not surprisingly, some courts have found that the front steps and common hallway of an apartment complex are public places in circumstances nearly identical to those in this case while other courts have determined that these areas are not public places in similar circumstances.

*Compare Bailey v. State,* 334 Ark. 43, 972 S.W.2d 239, 243 (1998), *and People v. Perez,* 64 Cal.App.3d 297, 134 Cal.Rptr. 338, 340 (1976), *with City of Green v. Rhoades,* No. 20169, 2001 WL 251351, at *2 (Ohio Ct.App. Mar. 14, 2001), *and State v. Culp,* 433 N.E.2d 823, 826 (Ind.Ct.App.1982). While we note the various conclusions reached by these courts, we believe the differences in statutory language and interpretive principles applicable to each case negate the value of these precedents for the resolution of this appeal.

that "absent some special circumstance, even police officers are not entitled to enter private automobiles on the public highways." *Id.* at 56–57.

*Lake* essentially recognized a "bubble" of privacy in the vehicle although it was in an otherwise public location. To a large extent, this case involves a similar concept. The State argues, at least implicitly, that Booth's own apartment may be a private location, but the bubble bursts once she crosses the threshold of her apartment door into the common areas of the house. Booth seemingly argues that, similar to a single-family home, everything at or behind the front door of the apartment house should be presumptively private. Although both of these arguments are appealing, several factors—including legislative intent, the laws' purposes, and prior case precedents—indicate that the State's approach to this issue is the correct one.

■ We believe it is clear that both the public intoxication and open container laws are, at least, "designed to prevent nuisance and annoyance to members of the general public" and "serve as a protection against offenders who endanger the well-being of themselves or others." *Runner*, 310 S.E.2d at 483; *see also* Iowa Code § 123.1. Thus, in determining whether Booth violated these laws, we must consider the effect of her alleged violations on those around her. This includes her fellow tenants. Although each has signed a lease in the same building, each remains entitled to be free from nuisance and annoyance and to be protected from the actions of a fellow tenant. *See State v. Culp*, 433 N.E.2d 823, 827 (Ind.Ct.App.1982) (Buchanan, J., dissenting) ("Intoxicated persons, be they tenants of the building or guests of tenants, are not guests of the remaining tenants. These remaining tenants are part of the 'public' and should not be compelled to tolerate drunkenness in close proximity to

their abode."). This key factor mandates a construction of the statute that protects the interests of an offender's fellow tenants and others in the common areas of the apartment house so as to avoid an evasion of legislative intent and purpose. The statute would have little protective effect if it only applied to those areas where all members of the public would have access.

This conclusion finds support in our prior cases, particularly *State v. Davidson*, 217 N.W.2d 630 (Iowa 1974). *See also State v. Elliott*, 557 N.W.2d 887, 889–90 (Iowa 1996). In *Davidson*, we determined that a tenant who was found in the common hallway of his apartment complex and charged with carrying a concealed weapon was not entitled to invoke a statutory exception to the crime based on his carrying the weapon "in his own dwelling house or other land possessed by him." *Davidson*, 217 N.W.2d at 631. In reaching this conclusion, we rebuffed the defendant's argument that "when he was in the common hallway adjacent to his apartment he was at a place where he was entitled to be under his lease" thus bringing the hallway "within the statutory term 'dwelling house or other land possessed by him.'" *Id.* at 631–32. We reasoned that accepting the defendant's argument "would permit one [carrying a concealed weapon] to wander about apartment buildings inhabited by hundreds of persons simply because his own living quarters were located somewhere" in the complex, a result contrary to legislative intent. *Id.* at 632.

This observation in *Davidson* can be analogized to this case, even though different statutes are at issue. Concealed weapon, public intoxication, and open container laws are each meant to ensure the well being of the public, including persons who also happen to be co-tenants with an offender. *See Elliott*, 557 N.W.2d at 889–90;

*Davidson*, 217 N.W.2d at 632; *Runner*, 310 S.E.2d at 483. An interpretation that did not take these fellow tenants into account would leave them subject to the limited protective capabilities of a landlord but largely preclude effective law enforcement for a number of offenses that the legislature has sought to prevent. *See* Iowa Code § 123.46(2); *see also id.* § 124A.4 (advertising "to promote the distribution of imitation controlled substances"); *id.* § 723.4(1) (disorderly conduct); *id.* § 724.22(7) (permitting access to a loaded firearm by a child). This would be an impractical and absurd result, clearly contrary to legislative intent and purpose. *Gardin*, 661 N.W.2d at 197. Thus, the statutory requirement of public access does not require all members of the public to have access to the place in question. We do not believe our legislature intended such a narrow application of the statute because it would fail to protect many members of the public.

Moreover, in as much as the result in *Lake* was premised on or supported by our observation that Fourth Amendment jurisprudence establishes the "private nature of automobiles," the same cannot be said for the front steps or common hallway of the apartment house. *Lake*, 476 N.W.2d at 56. Most courts considering the issue have concluded that a tenant has no reasonable expectation of privacy in the front steps or common hallway of a multi-unit apartment complex for purposes of Fourth Amendment analysis.[3] *See United States v. Nohara*, 3 F.3d 1239, 1242 (9th Cir.1993) ("Most other [United States Courts of Appeals] agree a tenant does not have a reasonable expectation of privacy in an apartment building hallway or other common area."); *United States v. Calhoun*, 542 F.2d 1094, 1100 (9th Cir.1976) ("The hallway of an apartment building . . . is a 'public' place for purposes of interpreting the Fourth Amendment."); *State v. Santiago*, 224 Conn. 494, 619 A.2d 1132, 1136 (1993) ("The simple fact that there is a porch or stoop in front of a house [(in this case, an apartment house)] does not make the threshold a place entitled to fourth amendment protection."); *see also United States v. Conner*, 948 F.Supp. 821, 838–39 (N.D.Iowa 1996) (collecting cases). Thus, the private vehicle in *Lake* is distinguishable from the front steps and common hallway here. Any potential Fourth Amendment analogy between the two cases would likely warrant a comparison between the vehicle in *Lake* and Booth's own apartment. The *non*-private nature of the front steps and common hallway only bolsters our conclusion that both laws at issue in this case were meant to include these areas.

Thus, we believe both the public intoxication and open container laws were in-

---

**3.** In *State v. Breuer*, 577 N.W.2d 41, 42 (Iowa 1998), we considered whether the defendant had a legitimate expectation of privacy in the stairway/hallway "leading from the outer door of [his] apartment building to his upstairs apartment door" as part of our broader analysis of the defendant's Fourth Amendment claim. The trial record in *Breuer* revealed, "that there were only two apartments in the building and that Breuer was the only tenant who used the hallway." *Breuer*, 577 N.W.2d at 46. For this reason, "the hallway was not an area used by other people coming and going in the building and therefore [could not] be considered a 'common area.'" *Id.* at 46–47. Thus, we concluded Breuer had a legitimate expectation of privacy in the hallway. *See id.* at 47. In reaching this conclusion, however, we specifically observed that, "those cases holding that a tenant does not have a reasonable expectation of privacy in hallways or common areas of *multi-unit* apartment buildings are not applicable to this case." *Id.* at 47 n. 5 (emphasis added); *see also State v. Anderson*, 517 N.W.2d 208, 212 (Iowa 1994) ("[I]t is not necessary [in this case] to fully explore the extent to which the occupants of a multiple housing dwelling unit are entitled to an expectation of privacy.").

tended to include Booth's co-tenants as part of "the public" as defined by Iowa Code section 123.3(27). It is undisputed that each of her fellow tenants had the right to come and go through the front steps and common hallway of the apartment house, meaning the public "has or is permitted access" to these areas. *See* Iowa Code § 123.3(27). Thus, Booth was in a public place at the time her offenses were allegedly committed. The district court's conclusion to the contrary was in error.

### IV. Conclusion.

We reverse the decision of the district court and remand for entry of an order affirming the judgment and sentence of the judicial magistrate.

**REVERSED AND REMANDED.**

All justices concur except CARTER, J. and LAVORATO, C.J., who dissent.

CARTER, Justice (dissenting).

I disagree with the conclusion of the court that the apartment house hallway and entry steps were public places so as to make either the state statute or local ordinance applicable to that area. We recognized in *State v. Lake*, 476 N.W.2d 55, 57 (Iowa 1991), that "[a] right of public access is a touchstone of the section 123.3(23) definition of a public place." For purposes of applying that definition, I submit that public access refers to access by the public at large without invitation. I am confident that neither the tenants in this apartment building nor the building's owner have chosen to open it up to public access. Those persons who are welcome there come by invitation, express or implied.

In determining whether the areas where the alleged crimes were committed were public places, the majority relies on three factors that have absolutely no bearing on whether Booth's acts fall within the statutory definition of the crimes of which she has been convicted. These are the defendant's status in the common areas of the building under the terms of her lease, the sensibilities of the other tenants in the building, and Fourth Amendment jurisprudence concerning a reasonable expectation of privacy. The tenant's status in the common areas of the building under her lease in no way governs the right of public access. Nor do the tenant's sensibilities to the conduct of other tenants.

Fourth Amendment jurisprudence was referred to in the *Lake* case to confirm the private nature of an automobile interior. The Fourth Amendment jurisprudence relied on by the majority is in no way determinative of a right to admission on the part of the general public. That is because there are many places where the general public is not admitted but where persons present do not enjoy a reasonable expectation of privacy. The district court acted properly in reversing the judgment of the magistrate, and I would affirm its order.

LAVORATO, C.J., joins this dissent.