# IN THE SUPREME COURT OF IOWA

No. 14–0183

Filed June 12, 2015

**STATE OF IOWA,**

> Appellant,

vs.

**PATIENCE PAYE,**

> Appellee.

---

Appeal from the Iowa District Court for Black Hawk County, Jeffrey L. Harris, District Associate Judge.

A criminal defendant appeals her conviction for public intoxication, contending the front steps of her single-family residence are not a "public place" under the public intoxication statute. **REVERSED.**

Mark C. Smith, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Benjamin Parrott, Assistant Attorney General, Thomas Ferguson, County Attorney, and Jeremy Westendorf and Kimberly Griffith, Assistant County Attorneys, for appellee.

**HECHT, Justice.**

Twelve years ago, we concluded the front steps and common hallway of an apartment house are public places under Iowa's public intoxication statute. *State v. Booth*, 670 N.W.2d 209, 215–16 (Iowa 2003); *see* Iowa Code § 123.46(2) (2013) ("A person shall not be intoxicated in a public place."). However, in *Booth*, we concluded "the front steps of a single-family home are clearly distinguishable from the front steps of [an] apartment house," and left "for another day any other questions related to the character of the front steps of a single-family home." *Booth*, 670 N.W.2d at 212 n.1. Today we answer the question we left open in *Booth*: The front steps of a single-family home are not a public place under section 123.46(2) unless the home's residents make them public by extending a general invitation to the public at large to come upon the property. Because the State failed to prove the defendant in this case extended such an invitation to the public, we reverse her conviction and remand the case for the district court to dismiss the public intoxication charge.

## I. Background Facts and Proceedings.

On June 22, 2013, just before midnight, Waterloo police responded to a 911 call from Patience Paye. Paye reported she was the victim of domestic violence and requested police assistance. Upon arrival at the residence, Officer John Heuer proceeded inside and located the alleged aggressor, Kendrall Murray, while Officer Melissa Lippert spoke with Paye on the front stairs of the home. Paye did not exit the home until the officers arrived. She chose to step outside and speak with Officer Lippert on the front stairs because she did not want to upset her children, who were inside the house.

Murray provided Officer Heuer with his account of the evening's events. According to Murray, he and Paye began arguing over car keys. Murray had refused to let Paye leave the home with the car because she did not have a driver's license and, according to Murray, she was intoxicated. Paye became irate at Murray's refusal and punched him in the eye. Murray grabbed Paye's arm to prevent further punches or slaps and scratched Paye's arm in the process. Murray told Officer Heuer he and Paye frequently got into arguments when Paye was intoxicated and averred the evening's events were simply the latest episode.

Seeking to verify Murray's statement that Paye was intoxicated, Officer Heuer returned to the front steps and asked Paye if she had consumed any alcohol that day. Paye initially denied she had been drinking, but then admitted she had "one shot earlier in the day." Paye agreed to provide a breath sample. The sample yielded a blood alcohol concentration (BAC) of 0.267. A second sample several minutes later yielded a BAC of 0.264. After additional discussion with Officer Lippert, Officer Heuer determined Paye was the aggressor in the dispute with Murray. The officers arrested Paye for public intoxication[1] and transported her to the Waterloo police station.

The State charged Paye by trial information with public intoxication in violation of Iowa Code section 123.46. Paye had a previous public intoxication conviction, so the State charged a serious misdemeanor rather than a simple misdemeanor. *See* Iowa Code §§ 123.46(2) (providing public intoxication is a simple misdemeanor),

---

[1]The officers arrested Paye for both public intoxication and domestic assault, and the State initially charged her with both offenses. However, the State later dismissed the domestic assault charge. Accordingly, only the public intoxication charge is before us in this appeal.

.91(1) (providing a second conviction is a serious misdemeanor). Paye waived her right to a jury trial.

During the ensuing bench trial, the district court received in evidence a photograph of Paye's residence. The photograph depicts the front entrance to the residence consisting of several stairs approaching a small rectangular area that can fairly be characterized as an enclosed entryway. Metal hand railings are situated on either side of the stairs, and the stairs are neither enclosed nor covered by a roof or awning. The front yard of the residence is not fenced. On the night in question, there were no signs posted indicating that access to the property was restricted, but there also was no indication Paye had extended a general invitation for access to the public.

At trial, Paye asserted the front steps of her residence were not a public place, and therefore, she could not be convicted of public intoxication. Paye distinguished between businesses and parks, where any member of the public may go at almost any time, and a private property not open to unlimited public access. She further contended the purpose of the public intoxication statute—to prevent nuisance and annoyance to the public—was not implicated, because she had not exited her house until the officers arrived and there was no indication any member of the public considered her presence or conduct outside her home to be a nuisance or annoyance.

The district court rejected Paye's assertions. It concluded Paye's porch was public because it was plainly accessible and visible to any passersby. The court further concluded Paye's porch was "public" within the meaning of chapter 123 because it was a place to which the public is permitted access. *See* Iowa Code § 123.3(36) (defining "public place" as "any place, building, or conveyance to which the public has or is

permitted access"); *see also Florida v. Jardines*, 569 U.S. ___, ___, 133 S. Ct. 1409, 1415, 185 L. Ed. 2d 495, 502 (2013) (stating an implied invitation to approach a home's front entrance "is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters"). The court noted any member of the public had an implied invitation to use the front stairs to communicate with Paye. Accordingly, because it concluded Paye's front stairs were a public place, the court found Paye guilty of public intoxication. Paye appealed, and we retained the appeal.

## II.  Scope of Review.

The issue before us is narrow, but important: Are the front steps of a single-family residence a public place? Our answer to this question turns on the interpretation of the phrase "public place" in section 123.46(2). "Questions of statutory interpretation . . . are reviewed for correction of errors at law." *State v. Hagen*, 840 N.W.2d 140, 144 (Iowa 2013); *accord State v. Snyder*, 634 N.W.2d 613, 614–15 (Iowa 2001) (applying the errors-at-law standard to the question whether a snowmobile is a motor vehicle); *State v. McCoy*, 618 N.W.2d 324, 325 (Iowa 2000) (applying the errors-at-law standard to the question whether a sword cane is a closed and fastened container). The trial court's interpretation of the law is not binding on us. *McCoy*, 618 N.W.2d at 325; *see also State v. Deng Kon Tong*, 805 N.W.2d 599, 601 (Iowa 2011).

## III.  Analysis.

Paye asserts the front stairs of her residence were not a public place because she had not extended a general invitation to the public and could impede any person's access to them. The State contends any modicum of public access, even if partially circumscribed, suffices to make a place public under all circumstances for purposes of section 123.46(2). We agree with Paye.

We begin our analysis with the language of chapter 123. "In interpreting statutes, our goal is to ascertain and give effect to legislative intent." *Snyder*, 634 N.W.2d at 615. Section 123.46(2) plainly prohibits intoxication "in a public place." Iowa Code § 123.46(2). The Code defines "public place" as "any place . . . to which the public has or is permitted access." *Id.* § 123.3(36).[2]

The legislature enacted chapter 123 "for the protection of the welfare, health, peace, morals, and safety of the people of the state." *Id.* § 123.1. The legislature has further declared that the provisions of chapter 123 "shall be liberally construed for the accomplishment of that purpose." *Id.* With specific regard to public intoxication, we have said

> "statutes proscribing public intoxication serve two general purposes. First, they are designed to prevent nuisance and annoyance to members of the general public. Second, they also serve as a protection against offenders who endanger the well-being of themselves or others."

*Booth*, 670 N.W.2d at 213 (quoting *State v. Runner*, 310 S.E.2d 481, 483 (W. Va. 1983)).[3]

---

[2]Iowa is one of few states to criminalize the mere fact of intoxication. *Compare* Iowa Code § 123.46(2), *with* Mont. Code Ann. § 53-24-107(1) (West, Westlaw current through chs. effective Feb. 27, 2015) ("A person who appears to be intoxicated in public does not commit a criminal offense solely by reason of being in an intoxicated condition . . . ."), N.C. Gen. Stat. Ann. § 14-447(a) (West, Westlaw current through 2015 Reg. Sess., ch. 20) ("No person may be prosecuted solely for being intoxicated in a public place."), *and* N.D. Cent. Code Ann. § 5-01-05.2 (West, Westlaw current through Senate Bill 2301, 64th Legis. Assemb., 2015 Reg. Sess.) ("No person may be prosecuted in any court solely for public intoxication.").

[3]Of course, public intoxication statutes are not the only means of establishing consequences for unruly behavior by intoxicated persons. The legislature has enacted many other statutes that may apply to actions taken by rowdy and intoxicated individuals. *See, e.g.*, Iowa Code § 708.1 (defining assault); *id.* § 708.7(1)(*b*) ("A person commits harassment when the person, purposefully and without legitimate purpose, has personal contact with another person, with the intent to threaten, intimidate, or alarm that other person."); *id.* § 723.4(2) (prohibiting "loud and raucous noise in the vicinity of any residence or public building which causes unreasonable distress to the occupants thereof"); *id.* § 723.4(3) (criminalizing the use of "abusive epithets" or threatening gestures that are "likely to provoke a violent reaction by another"). Further,

We now turn to our caselaw. In *Booth*, we focused on the dual purposes of public intoxication statutes and determined the front stairs and common hallway of an apartment house are a public place under section 123.46(2). *Id.* at 215–16. We noted neighbors in an apartment house are "entitled to be free from nuisance and annoyance and to be protected from the actions of a fellow tenant." *Id.* at 214. We concluded "the statutory requirement of public access does not require *all* members of the public to have access to the place in question." *Id.* at 215 (emphasis added). We determined cotenants in an apartment house constitute "the public" when they use common stairways and hallways, and accordingly, concluded the public "has or is permitted access" to apartment houses under the definition of a public place. *Id.* at 215–16.

However, we stated "the front steps of a single-family home are clearly distinguishable from the front steps of [an] apartment house." *Id.* at 212 n.1. In particular, we noted the front steps of a single-family home are an access point, whereas the front steps of an apartment house are a thoroughfare. *Id.* We also acknowledged that "a single individual or family may bar access to the front steps of a single-family home, [but] no single tenant holds the right to bar access to the apartment house." *Id.*

In addition to *Booth*, Paye relies upon *State v. Lake*, 476 N.W.2d 55, 56 (Iowa 1991). In *Lake*, the defendant was an intoxicated passenger in a car, and the State contended the car's interior was a public place because it was traveling on a public highway. *Id.* We disagreed, holding "[a] right of public access is the touchstone of the . . . definition of a

_____

police can arrest persons under the legal age for possession and consumption of alcohol, even on private property, subject to a few statutory exceptions. *See id.* § 123.47(2)–(3).

public place." *Id.* We concluded the public did not have and was not permitted access to the car's interior notwithstanding its location on a public street. *Id.*; *see* Iowa Code § 123.3(36). We also made one additional statement, which Paye highlights: "Many private places *including personal residences* are situated within the confines of a public area. Surely, this does not mean that the public is permitted access to those private locations." *Lake,* 476 N.W.2d at 56 (emphasis added).

We recognize that salespeople, neighbors, and other subsets of the public possess an implied license or invitation to approach Paye's front stairs. In another context, business patrons enjoy an implied license or invitation to enter shops and stores in furtherance of commerce. *See Keeran v. Spurgeon Mercantile Co.,* 194 Iowa 1240, 1242, 191 N.W. 99, 100 (1922) ("One who is on the premises of another as a customer for the purpose of purchasing goods is there by implied invitation . . . ."). Business premises are commonly considered public places for purposes of public intoxication statutes. *See In re Zorn,* 381 P.2d 635, 636 (Cal. 1963) ("Clearly . . . a barber shop is a public place."); *see also* W. Va. Code Ann. § 60-1-5 (West, Westlaw current through House Bill 2726, 2015 Reg. Sess.) (defining "public place" similarly to Iowa and including restaurants and hotel lobbies as examples of public places).

Yet, we conclude there is a significant difference between the implied invitation extended to a prospective customer of a business and the implied invitation allowing people to approach the front stairs of a single-family residence. The difference is the expectation of the person or enterprise deemed to have extended the invitation. A business generally wants as many people as possible to accept the invitation; we doubt the same is true for most inhabitants of single-family homes. *Cf. Nails v. Riggs,* 195 F. App'x 303, 311 (6th Cir. 2006) ("[A] private front yard is the

type of private property where the public is generally *excluded* and thus a jury could conclude it was unreasonable for [an officer] to believe [a person's] front lawn is a 'public place' 'to which the public . . . has access.' " (quoting Ky. Rev. Stat. § 525.010(3))); *State v. Perry*, 246 Iowa 861, 867, 69 N.W.2d 412, 415–16 (1955) (concluding a clubroom was a public place despite requiring an admission fee, because the clubroom's profit motive led its proprietors to "admit perfect strangers . . . upon the payment of a one dollar fee and no other requirement [or] qualification"). Although people can use Paye's front stairs to approach her home for limited purposes—for example, to sell a product, to talk about important civic issues, or to borrow a cup of sugar—Paye's implied consent to their entry upon her property "does not confer a right on the public to enter [it] at will" or constitute a generalized invitation for access to the public. *State v. Premsingh*, 962 P.2d 732, 736 (Or. Ct. App. 1998). This notable difference between implied invitations of general and limited scope strongly influences our determination that Paye's front steps were not a public place under the circumstances presented here.

A property-rights approach also illuminates this important difference and provides an analytical framework for harmonizing *Booth*, *Lake*, and the facts of this case. Unlike tenants in an apartment building, the residents of a single-family home have "the right of selecting . . . guests or visitors" and a "legal right to exclude [people] from [the] premises at any time and under all circumstances." *Rader v. Davis*, 154 Iowa 306, 312–13, 134 N.W. 849, 851 (1912); *see also Kaiser Aetna v. United States*, 444 U.S. 164, 176, 100 S. Ct. 383, 391, 62 L. Ed. 2d 332, 344 (1979) (characterizing the right to exclude others as "one of the most essential sticks in the bundle of rights that are commonly characterized as property"). This important right to exclude persons from the property

is a significant difference separating apartment houses and single-family homes. *See Booth*, 670 N.W.2d at 212 n.1. In other words, although Paye did not *exercise* her right to exclude or impede access, the fact she *had* that right makes her front stairs more like the vehicle interior in *Lake* than the common areas and hallways at issue in *Booth*. *See id.*; *Lake*, 476 N.W.2d at 56; *cf. State v. Mondaine*, 178 S.W.3d 584, 587–88 (Mo. Ct. App. 2005) (finding a defendant guilty of trespass when police found him on the front steps of someone else's residence and rejecting the defendant's assertion that he could not be guilty of trespass because the steps were presumptively open to the public).

Of course, we assume without deciding that the residents of a single-family home could expressly invite the public onto the property or affirmatively give up their right to exclude access and convert—at least temporarily—an otherwise private place into a public place for purposes of section 123.46(2). For example, residents of a single-family home could decide to hold a yard sale and post signs around the neighborhood advertising the day and time it will take place. Similarly, homeowners aiming to sell their property could host and advertise an open house, inviting any person to visit for a tour. But finding no evidence of such a generalized express or implied public invitation for access in this record, we conclude as a matter of law the front steps of Paye's single-family residence were not a public place for purposes of section 123.46(2) under the facts presented here.

In concluding the front steps of Paye's single-family residence were not a public place under the circumstances presented here, we find guidance in principles of statutory interpretation. First, "[i]t is axiomatic that courts are obliged to consider a challenged statute in its entirety." *State v. Hawk*, 616 N.W.2d 527, 529 (Iowa 2000). Second, when

interpreting statutes, we consider "[t]he consequences of a particular construction." Iowa Code § 4.6(5). When considering particular consequences, "[w]e look for a reasonable interpretation that achieves the statute's purposes and avoids absurd results." *State v. Gonzalez*, 718 N.W.2d 304, 308 (Iowa 2006); *see also State v. McGuire*, 200 N.W.2d 832, 833 (Iowa 1972). Together, these canons illustrate that an interpretation of section 123.46(2) concluding the front steps of a single-family residence are always a public place would create absurd results.

There are five sentences in section 123.46(2). Iowa Code § 123.46(2). The fourth sentence is at issue in this case: "A person shall not be intoxicated in a public place." *Id.* The second sentence also uses the phrase "public place:" "A person shall not use or consume alcoholic liquor in any public place except premises covered by a liquor control license." *Id.* When the same term appears multiple times in the same statute, it should have the same meaning each time. *See State v. Johnson*, 604 N.W.2d 669, 672 (Iowa Ct. App. 1999); *cf. Carson v. Roediger*, 513 N.W.2d 713, 716 (Iowa 1994) (applying this rule in a civil case). Thus, if the front stairs of a single-family residence are always a public place, it would be a *crime* to sit there calmly on a breezy summer day and sip a mojito, celebrate a professional achievement with a mixed drink of choice, or even baste meat on the grill with a bourbon-infused barbeque sauce—unless one first obtained a liquor license. We do not think the legislature intended Iowa law to be so heavy-handed.

Additionally, holding the front steps of a single-family home are always a public place would mean any intoxicated person who responsibly secures a ride home from a sober designated driver could be arrested for and convicted of public intoxication because they traversed the stairs of their single-family house while intoxicated. Iowans "should

not suffer a criminal penalty for taking . . . responsible action." *Moore v. State*, 949 N.E.2d 343, 346 (Ind. 2011) (Rucker, J., dissenting).[4]

Our conclusion is consistent with decisions of other courts holding that the front porch or front yard of a person's own residence is not a public place when that person has not extended a generalized invitation to the public and retains the right to impede or prevent access. *See People v. White*, 278 Cal. Rptr. 48, 51–52 (Ct. App. 1991); *Royster v. State*, 643 So. 2d 61, 64 (Fla. Dist. Ct. App. 1994) (per curiam); *Haynes v. State*, 563 N.E.2d 159, 160 (Ind. Ct. App. 1990); *Premsingh*, 962 P.2d at 736; *cf. Commander v. State,* 748 S.W.2d 270, 271 (Tex. Ct. App. 1988) (driveway). Paye "may have been found intoxicated in a place *exposed to public view* but that, in and of itself, is not a violation." *White*, 278 Cal. Rptr. at 52 (emphasis added); *see also Lake*, 476 N.W.2d at 56 (concluding the interior of a car is not a public place even though it is in public view). Instead, a violation of section 123.46(2) occurs only if the defendant was in a public place. We conclude the State failed as a matter of law to prove Paye was in such a place.

**IV. Conclusion.**

The implied limited license of persons to approach Paye's front door did not transform the stairs of her single-family residence to a public place for purposes of Iowa Code section 123.46(2). The front stairs of Paye's home were not a public place under section 123.46(2)

---

[4]Paye summoned officers to her home to defuse a potentially violent confrontation between her and Murray. "Simply put, [s]he was asking the police for help." *Stephens v. State*, 992 N.E.2d 935, 938 (Ind. Ct. App. 2013). Even though the officers eventually determined Paye was the aggressor in the dispute, we decline to interpret Paye's specific invitation to police as expanding the scope of the *public's* access to her front stairs. Moreover, the State does not claim Paye's express invitation to police made her front stairs public; it asserts the stairs are *always* public regardless of who is actually there. As we have explained, we reject that assertion.

because she could restrict, impede, or deny public access to that location and because she had not invited the general public to come there. Accordingly, Paye cannot be guilty of public intoxication because she was not intoxicated in a public place. We reverse her conviction and remand the case for the district court to dismiss the charge.

**REVERSED.**