MANSFIELD, Justice
(concurring specially).
I concur in the result and in all but Parts V and VI of the court’s opinion.
I do not agree that Iowa Code section 514F.2 regulates amounts paid for chiropractic services. Rather, I believe it merely requires that healthcare plans with cost-containment features not discriminate in their coverage of chiropractic services.
As the majority notes, the 1986 legislation enacted four separate nondiscrimination provisions relating to chiropractic services. See 1986 Iowa Acts ch. 1180, §§ 2, 5, 7, 10. The first required that group health accident or health insurance plans provide coverage for chiropractic services on a nondiscriminatory basis. See id. § 2 (now codified at Iowa Code § 509.3(1)(/) (2017)). The second required nonprofit health service corporations to provide coverage for chiropractic services on a nondiscriminatory basis. See id. § 5 (now codified at Iowa Code § 514.7(3)). The third required health maintenance organizations (HMOs) to provide nondiscriminatory coverage for chiropractic services. See id. § 7 (now codified at Iowa Code § 514B.l(5)(c)). And the fourth, the one at issue in this litigation, related to all insurers and self-insurers, and authorizes them to use
capitated payment systems, prospective reimbursement rate systems, utilization control systems, incentive systems for the use of least restrictive and least costly levels of care, preferred provider contracts limiting choice of specific provider, or other systems, methods or organizations designed to contain costs without sacrificing care or treatment outcome, provided these systems do not limit or make optional payment or reimbursement for health care services on a basis solely related to the license under or the practices authorized by chapter 151 or on a basis that is dependent upon *895 a method of classification, categorization, or description based upon differences in terminology used by different licensees under the chapters of [Title IV, subtitle 3] of the Code in describing human ailments or their diagnosis or treatment.
Id. § 10 (now codified at Iowa Code § 514F.2).
The majority finds that the first three provisions merely prohibit discrimination in coverage while the fourth prohibits discrimination in rates. I think all four relate to coverage only.
The language in the quoted text of section 10 that begins with the word “provided” was added to make clear that the specific new authorization in the 1986 legislation for cost containment systems would not undermine the broad principle elsewhere in the 1986 legislation requiring coverage of chiropractic services. Without that proviso, an insurer or self-insurer might argue that a cost containment system is exempt from the mandate to cover chiropractic services.
Notably, the legislature employed the phrase, “provided these systems do not limit or make optional payment or reimbursement.” Id. (emphasis added). As the appellees point out, the term “limit” is ambiguous. You can limit something either by paying less for it or by not paying for it at all. However, as they further observe, the term “make optional” is not the language of rate regulation. If something is made optional it is not covered. Thus, the proviso clarifies that chiropractic services must be covered without discrimination in any cost containment system.
Also, if the section 614F.2 proviso were intended to grant authority for rate regulation, as opposed to merely clarifying that the rest of section 614F.2 does not supersede sections- 509.3(1)00, 514.7(3), and 514B.l(5)(c) requiring coverage of chiropractic services on a nondiscriminatory basis, it would be odd to have such authority appear only in a proviso. And it would be odder still to prohibit rate discrimination only when cost containment systems were used, but not for example in traditional fee-for-serviee plans.
Moreover, the identical “limit or make optional” language appears in two of the other nondiscrimination provisions in the 1986 legislation. See id. §§ 2, 7. Both of those are acknowledged by the majority to be coverage provisions only. Does the phrase mean two different things within the very same statute? • I think not. See State v. Paye, 865 N.W.2d 1, 7 (Iowa 2015) (“When the same term appears multiple times in the same statute, it should have the same meaning each time.”).
The court makes much of the fact that section 10 of the 1986 legislation was added as an amendment to the original bill. This strikes me as a “so what?” When the general assembly added section 10 on cost containment, at that point it also needed to add language clarifying that the newly granted authority to utilize cost containment systems would not override the requirement that insurers not discriminate in coverage of chiropractic services. Hence, the proviso was included in section 10.
For all these reasons, I-would affirm both the district court’s judicial review decision and the insurance division’s administrative ruling on this alternative ground. Both of them concluded that the proviso in Iowa Code section 514F.2 pertained to coverage of chiropractic services only, and so do I.
Because I do not view Iowa Code section 514F.2 as authority for regulating rates, I do not need to reach Part VI of the court’s opinion. However, let me briefly explain my disagreement with that part of the court’s analysis. To the extent section 514F.2 prohibits discrimination, the sweep *896 is broader than just discrimination based “solely on licensure,” as urged by the court. To the contrary, section 514F.2 also prohibits discrimination based upon the “practices” that chiropractors are authorized to perform or “a method of classification, categorization, or description based upon differences in terminology used by different licensees.” Iowa Code § 514F.2.
To me, when an insurer says it pays all chiropractors categorically less than it pays other healthcare providers for performing the same procedures because chiropractors as a group have less training, a more limited scope of practice, and lower overhead and costs, this is not an out for the insurer. The insurer is still discriminating based on the chiropractor’s status as a chiropractor (i.e., his or her licensing and practice). Wellmark does not claim, for example, that it would pay more to a chiropractor who had a Ph.D. or an ornate office.
But again, I do not believe Iowa Code section 514F.2 is a rate provision. Thus, section 514F.2 does not prohibit an insurer from paying a chiropractor less than another healthcare provider for the same procedure, so long as the insurer covers chiropractic performance of that procedure. Accordingly, Part YI of the court’s opinion reaches an issue that I do not need to reach.
For the foregoing reasons, I specially concur.
Waterman, J., joins this special concurrence.